## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 33696

GERALD E. WEITZ and CONSUELO J. )
WEITZ, husband and wife and WEITZ & )
SONS, LLC, an Idaho limited liability )
company, )
    )
    Plaintiffs/Counterdefendants/Appellants )
    and Cross-Respondents, )
    )
v. )
    )
TODD A. GREEN and TONIA L. GREEN, )
husband and wife, STEVEN R. SHOOK and )
MARY E. SILVERNALE SHOOK, DANIAL )
T. CASTLE and CATHERINE C. CASTLE, )
and U.S. BANK N.A., )
    )
    Defendants/Counterplaintiffs/Respondents )
    and Cross-Appellants. )

**Boise, December 2009 Term**

**2010 Opinion No. 40**

**Filed: April 2, 2010**

**Stephen W. Kenyon, Clerk**

---

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

District court ruling on boundary dispute, <u>affirmed in part, reversed in part</u> and <u>remanded.</u>

Charles A. Brown, Lewiston, argued for appellants.

Magyar & Rauch, PLLC, Moscow, for respondents. Andrew M. Schwam argued.

---

BURDICK, Justice

This action arises out of a dispute over the boundary line separating real property, between Gerald E. Weitz, Consuelo J. Weitz, and Weitz & Sons, LLC (collectively "Appellants" or "Cross-Respondents"), and Todd A. Green, Tonia L. Green, Steven R. Shook, Mary E. Silvernale Shook, Danial T. Castle, Catherine C. Castle, and U.S. Bank N.A. (collectively "Respondents" or "Cross-Appellants").[1]

---

[1] At times it is more correct to refer to the action of individual groups of Respondents. In such circumstances they shall be referred to as the "Greens," "Castles," and "Shooks."

1

Appellants argue that the district court incorrectly ruled on their claims for boundary by agreement, equitable estoppel and laches, prescriptive easement, trespass for damages, and quasi-estoppel. Appellants further contend that the district court erred in: (1) denying Appellants' motion to amend their complaint to include a claim of adverse possession, and (2) in quieting title in favor of Respondents instead of Appellants. Finally, Appellants argue that the district court erred in finding Appellants liable for trespass and awarding damages against them.

Cross-Appellants, in turn, contend that the trial court made a legal error in not finding Idaho Code § 6-202 applicable to Cross-Respondents' trespass, and in awarding Cross-Appellants damages for trespass based on the merchantable value of the destroyed trees and vegetation, rather than on the costs of restoring the property to its previous condition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2002, the Greens purchased 160 acres, under warranty deed, from the Rogers Family Trust in a rural area of Latah County commonly referred to as Moscow Mountain. Appellants own the parcel of land located immediately to the north of the property purchased by the Greens. Shortly after the Greens purchased the property, a dispute arose between the Greens and Appellants, concerning the ownership of 8.5 acres of land located along the common border of the two properties. In December 2002, the Greens' attorney wrote to Appellants' attorney alleging that Appellants were trespassing on the Greens' property. In July of 2003, Appellants entered the contested land and built a fence in place of an old and dilapidated fence, which Appellants contend marks the border of their property.

Meanwhile, the Greens subdivided their property into four sections, three of which front Appellants' property. The Castles and Shooks each purchased one of these parcels, and as part of the purchase agreement the Greens agreed to defend title in the disputed property on behalf of the Castles and Shooks, against Appellants, and to reimburse the Shooks and Castles if title to the land were quieted in favor of Appellants.

On February 4, 2004, Appellants filed suit against Respondents seeking to quiet title in the disputed 8.5 acres on a theory of boundary by agreement and/or acquiescence, or estoppel and laches. In the alternative, Appellants claimed a prescriptive easement to the trail that runs along the fence within the disputed property. Appellants also sought damages for trespass. Respondents filed a counterclaim, also seeking to quiet title, and alleging that Appellants owed damages for timber trespass, related to Appellants entering the property and cutting down small

2

trees to build a fence, as well as for slander of title. While the matter was in litigation, Appellants continued to use the property under a claim of right, and on April 15, 2005, the district court granted a preliminary injunction to keep Appellants off the disputed property pending resolution of the case.

On May 31, 2005, Appellants changed counsel and on June 10, 2005, they filed a Motion for Leave to Amend Complaint and Respond to Counterclaim. On July 18, 2005, subsequent to a hearing on June 27, 2005, the motion was denied. On August 1, 2005, Appellants filed a Motion for Reconsideration, and following a hearing on the motion on August 29, 2005, the motion was denied on September 27, 2005. Appellants filed another Motion for Reconsideration on September 26, 2005, alleging new facts pertaining to their intended claim of equitable estoppel, and following argument in open court on September 27, 2005, the motion was granted on October 3, 2005, as to adding a claim of equitable estoppel.

On January 1, 2006, the court issued its Memorandum Decision, awarding the Greens, Shooks, and Castles each $500 in damages for Appellants' trespass on Respondents' property. Following argument on post-trial motions, the district court issued its Amended Memorandum Decision on June 28, 2006, which superseded the initial Memorandum Decision, and found in favor of Respondents on their slander of title claim. An order awarding attorney fees and costs to Respondents was also issued on June 28, 2006. On September 28, 2006, the district court issued an Opinion and Order, and Judgment[2] was issued on October 17, 2006. Appellants filed this timely appeal on November 16, 2006.

## II. ISSUES ON APPEAL

1. Whether the district court abused its discretion in denying Appellants' motion to amend their Complaint to add a claim for adverse possession.

2. Whether the district court based its factual findings upon substantial and competent evidence, and whether that evidence supported the district court's conclusions of law that Appellants failed to prove their claims of boundary by agreement/acquiescence, estoppel and laches, prescriptive easement, and quasi-estoppel.

3. Whether the district court erred in finding that Respondents had proved that Appellants had committed slander of title against Respondents, and in consequently awarding Respondents attorney fees.

---

[2] In the Judgment the district court dismissed U.S. Bank N.A. as a defendant, finding that it had no interest in the lawsuit.

3

4. Whether the record supports the district court's holding that Gerald and Consuelo Weitz committed trespass to the property of Respondents, whether damages were correctly assessed in accordance with that finding, and whether sufficient intentional and willful conduct was demonstrated on the behalf of the Weitzes so that I.C. § 6-202, allowing for treble damages, should have applied; and whether in the alternative, Respondents should have been found to have trespassed against Appellants.

5. Whether attorney fees should be awarded on appeal to either side, and whether additional attorney fees should be awarded to either party upon remand.

### III. STANDARD OF REVIEW

The standard of review that this court employs when considering an appeal from a trial court acting as fact-finder is stated in *Lettunich v. Lettunich*:

> When we consider an appeal from a district court sitting as the fact finder, we do so through our abuse-of-discretion [lens]; that is, we examine whether the trial court (1) rightly perceived the issues as ones of discretion; (2) acted within the outer boundaries of that discretion and appropriately applied the legal principles to the facts found; and (3) reached its decision through an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). In conducting our review, we liberally construe the district court's findings in favor of the judgment. *Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 699, 874 P.2d 506, 510 (1993). We will not disturb a district court's findings of fact unless they are clearly erroneous. A court's findings of fact are not clearly erroneous if they are supported by substantial and competent, though conflicting, evidence. *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 794 P.2d 1389 (1990); *Murgoitio v. Murgoitio*, 111 Idaho 573, 576, 726 P.2d 685, 688 (1986); I.R.C.P. 52(a).

141 Idaho 425, 429, 111 P.3d 110, 114 (2005). "This Court will not substitute its view of the facts for that of the trial court." *Justad v. Ward*, 147 Idaho 509, 511, 211 P.3d 118, 120 (2009). "Questions of credibility and the weight of the evidence are matters uniquely within the province of the trial court." *Treasure Valley Plumbing and Heating, Inc. v. Earth Res. Co.*, 115 Idaho 373, 376, 766 P.2d 1254, 1257 (Ct. App. 1988). "The findings of the trial court on the question of damages will not be set aside when based upon substantial and competent evidence." *Akers v. Mortensen*, 147 Idaho 39, 43-44, 205 P.3d 1175, 1179-80 (2009).

### IV. ANALYSIS

**A. The district court did not abuse its discretion in denying Appellants' motion to amend their Complaint to add a claim of adverse possession.**

Appellants contend that the district court abused its discretion in denying Appellants' motion to amend their Complaint to add a claim of adverse possession.

4

Idaho Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been filed, a pleading may only be amended by "leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . ." An abuse-of-discretion standard is employed in reviewing a district court's denial of a motion to amend a complaint to add an additional cause of action. *Farmers Ins. Exch. v. Tucker*, 142 Idaho 191, 193, 125 P.3d 1067, 1069 (2005). "If the amended pleading does not set out a valid claim, or if the opposing party would be prejudiced by the delay in adding the new claim . . . it is not an abuse of discretion for the trial court to deny the motion to file the amended complaint." *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991).

The record reflects that the district court heard argument on Appellants' Motion to Amend, and rightly perceived the issue of leave to amend a complaint as one of discretion at that point in the proceedings. After extensive argument by counsel on both sides, the court, in its discretion, denied the motion to amend, as it found that: (1) the proposed amendment would not set out a valid claim, and (2) allowing amendment would result in prejudice to Respondents.[3] Following Appellants' Motion to Reconsider the district court allowed further argument on the issue, and again found that allowing the amendment would result in prejudice to Respondents. Considering the fact that the Motion to Amend was made well over a year after the filing of the initial Complaint, in addition to the statements from Respondents' counsel that allowing the amendment would require additional evidence and witness gathering, and the court's finding that the facts alleged by Appellants would fail to establish a valid claim of adverse possession, it is clear that the district court acted within its discretion in denying the Motion to Amend.

**B. The district court did not abuse its discretion in finding that Appellants had failed to prove their claims of boundary by agreement/acquiescence, estoppel and laches, prescriptive easement, and quasi-estoppel.**

### 1. The Greens were bona fide purchasers for value without notice.

Appellants contend that the district court abused its discretion in finding that Appellants had failed to prove by clear and convincing evidence that either a boundary by agreement or prescriptive easement existed. The essence of Appellants' claim is that a fence had been in

---

[3] Incidentally, although Appellants claim in their brief that allowing the amendment would have resulted in no change to either the witnesses or experts, "the Greens would not have disclosed different experts; and the Greens would not have disclosed different lay witnesses," the transcript reveals that Respondents did anticipate having to call new witnesses if the amendment were allowed. Respondents' counsel stated that if the court did "add adverse possession to this case, I now must find and speak to the people who have been doing the taxes here. And then I must find and speak to people who have been making use of this land without obtaining permission."

existence for an extended period of time, and that Appellants, their predecessors in title, and Respondents' predecessors in title, had treated the fence as a boundary line since around 1929. Appellants further contend that, even if they didn't hold the land under boundary by agreement, they had obtained a prescriptive easement to use the trail that runs through the land near the fence.

It is clear that Appellants had not perfected their title in the property under a theory of boundary by agreement, nor perfected their claim of a prescriptive easement right, prior to the Greens' purchase of the property. The district court found that the Greens were bona fide purchasers for value without notice (BFPs), and that a reasonable person in the Greens' position would not have been placed upon notice that another party was making claim to the contested property prior to their purchase.

"[W]hen one is purchasing land, the rule of *caveat emptor* applies and . . . 'whatever is notice enough to excite the attention of a man of ordinary prudence and prompt him to further inquiry, amounts to notice of all such facts as a reasonable investigation would disclose.'" *Hunter v. Shields*, 131 Idaho 148, 153, 953 P.2d 588, 593 (1998) (quoting *Hill v. Fed. Land Bank*, 59 Idaho 136, 141, 80 P.2d 789, 791 (1938)). As this Court held in *Luce v. Marble*:

> "Once a boundary line has been fixed under the doctrine of agreed boundary, that boundary is binding upon successors in interest who purchase *with notice of the agreement*. The general rule is that one purchasing property is put on notice as to any claim of title or right of possession which a reasonable investigation would reveal."

142 Idaho 264, 271, 127 P.3d 167, 174 (2005) (emphasis added) (quoting *Duff v. Seubert*, 110 Idaho 865, 870, 719 P.2d 1125, 1130 (1985)). A prescriptive easement is likewise binding upon successors in interest only when they purchase with either actual or constructive notice of the agreement. *See Hunter*, 131 Idaho at 153, 953 P.2d at 593.

In order to claim the protection of being a BFP, a party "must show that at the time of the purchase he paid a valuable consideration and upon the belief and the validity of the vendor's claim of title without notice, actual or constructive, of any outstanding adverse rights of another." *Imig v. McDonald*, 77 Idaho 314, 318, 291 P.2d 852, 855 (1955). "If a district court's findings of fact are supported by substantial and competent, though conflicting, evidence, this Court will not disturb the findings." *Luce*, 142 Idaho at 269-70, 127 P.3d at 172-73.

6

In its Amended Memorandum Decision the district court concluded as a matter of law that the Greens were BFPs. The district court based this conclusion of law on several findings of fact:[4]

1.  The "fence" in question had lain on its side for years and was more accurately referred to as "the remains of a fence, not as a fence."

2.  "The trail on the property was really nothing more than a footpath.  It would not have put a reasonably observant purchaser on notice that someone other than the deeded owner of the property claimed title to the disputed property."

3.  The old shack located on the property was a "dilapidated structure that has not been used in decades."

4.  A rusted-out sign placed in one tree with the word "line" written on it was not sufficient to put a reasonably diligent purchaser on notice.

The record shows that these factual findings are based upon substantial and competent, albeit contested, evidence.  Respondents' expert, Thomas Richards, testified that he examined aerial photographs of the area taken on different dates, and the photos showed that the fence, present in 1965, was no longer standing in 1987.  No party testified that the fence had been rebuilt in between 1987 and the Greens' purchase of the property in August 2002, and Consuelo Weitz testified that she did not believe the fence had been repaired or maintained after 1972, and had eventually become dilapidated and fallen to the ground.  Michael O'Neal testified that in the condition the radio building was in he could not imagine that it had ever been used as a radio building, and that it was "very derelict looking."  Todd Green testified that the trail in question was a narrow foot path at the time he examined the property before purchase.  Steven Shook testified that numerous trees laid across the trail in question in 2000.[5]

---

[4] Appellants also argue that the district court judge acted improperly in walking the fence line on the disputed property for himself, arguing that the judge improperly based his findings of fact upon his personal observations of conditions on the disputed property several years after Respondents viewed the property as prospective purchasers. Although the district court judge mentions this visit two times in his Amended Memorandum Decision, it is clear from reading that decision that the judge did not rely upon his personal experience, but rather upon testimony and exhibits (which included numerous photos of the area walked, presented by both Appellants and Respondents) offered at trial. This Court in *Akers v. Mortensen*, 147 Idaho 39, 48, 205 P.3d 1175, 1184 (2009) held that, where a district court had personally viewed the property at issue during the course of the trial, but based its findings of fact upon exhibits in the record, that finding was supported by substantial and competent evidence.  Such is the case here.

[5] Appellants attempt to attack the Greens' status as BFPs by claiming that, under the settlement agreement with the Rogers Family Trust, the Greens have recovered approximately their entire  purchase price for the disputed acreage, and therefore, have basically paid nothing of value for it.  This is disingenuous.  The district court found that, although the settlement from the Rogers Family Trust was calculated based upon a per-acre cost of the property, and essentially equaled the purchase price for 8.5 acres, this settlement did not constitute a refund, but rather a calculated decision on behalf of the Rogers Family Trust that they would rather settle with the Greens than defend title to the

## i. *Boundary by agreement or acquiescence*

"'Boundary by agreement or acquiescence has two elements: (1) there must be an uncertain or disputed boundary and (2) a subsequent agreement fixing the boundary.'" *Downey v. Vavold*, 144 Idaho 592, 595, 166 P.3d 382, 385 (2007) (quoting *Luce v. Marble*, 142 Idaho 264, 271, 127 P.3d 167, 174 (2005)). The party seeking to establish boundary by agreement has the burden of proving these two elements by clear and convincing evidence. *Luce*, 142 Idaho at 270-71, 127 P.3d at 173-74. A subsequent agreement may be inferred from the conduct of parties or their predecessors, including acquiescence to the location and maintenance of a fence line for a long period of time; however, it is not conclusive evidence. *Brown v. Brown*, 18 Idaho 345, 357, 110 P. 269, 273 (1910).

Here, the district court found that the first element had been clearly established, as there was undisputed evidence that an uncertain or disputed boundary had existed in 1929. However, the court found that Appellants failed to establish by clear and convincing evidence that there was an express or implied agreement fixing the boundary. The court's finding regarding the condition of the fence is provided above. In addition, the court held that although Homer Ferguson testified that a predecessor in title to Respondents, Inez Rogers, had made a statement thirty years ago seeming to indicate that the fence was the agreed-upon boundary, he also testified that he didn't believe Inez Rogers was strong enough to actually view the property herself. This latter observation was confirmed by Inez's son Thomas Rogers, who testified that his mother had very little to do with the property, had likely never seen the fence in question, and that he, as manager of the Rogers Family Trust, had not considered the fence to constitute the property boundary. The burden of proof was upon Appellants to demonstrate that Respondents' predecessors in title had agreed or acquiesced to the fence as a boundary and the court found that they failed to prove this by clear and convincing evidence.

The district court's analysis as to the second element of boundary by agreement or acquiescence was erroneous. The uncontroverted evidence shows that the fence was built in 1929 and maintained until 1972; the appropriate inquiry would have been whether Appellants submitted sufficient evidence from which the fact-finder, here the district court, should have

---

property in court themselves. The Rogers Family Trust sold to the Greens under a warranty deed, and would have been obligated to defend the Greens' title to the property in court absent the settlement. In making the settlement agreement they decided it would be preferable to pay damages rather than defend the Greens' title themselves.

8

inferred that an agreement to treat the fence as a boundary was made during that time period. The district court focused on the period from 1972-2002 in its analysis.

However, this error is harmless. Having found that the Greens were BFPs who purchased the property without notice of any boundary by agreement, such an agreement would not have been binding upon the Greens, even if it did exist. *See Luce v. Marble*, 142 Idaho 264, 271, 127 P.3d 167, 174 (2005).

### ii. *Prescriptive easement*

"In order to establish a private prescriptive easement, a claimant must present reasonably clear and convincing proof of open, notorious, continuous, and uninterrupted use under a claim of right and with the knowledge of the owner of the servient tenement for the prescriptive period of five years." *Marshall v. Blair*, 130 Idaho 675, 680, 946 P.2d 975, 980 (1997). "To acquire an easement by adverse possession over the real property of another the use must be hostile and cannot be by acquiescence or consent." *Simmons v. Perkins*, 63 Idaho 136, 144, 118 P.2d 740, 744 (1941). *See also Marshall*, 130 Idaho at 680, 946 P.2d at 980, ("[A] prescriptive right cannot be obtained if the use of the servient tenement is by permission of its owner, because the use, by definition, was not adverse to the rights of the owner."). "An individual using land as a road in common with the public cannot acquire a prescriptive right of way against the owner." *Simmons*, 63 Idaho at 144, 118 P.2d at 744.

The district court, upon reviewing the evidence presented, concluded that the condition of the trail precluded a finding of open and notorious use. The court also found that Appellants had failed to demonstrate that they had continuously and exclusively used the trail for the statutory five year period. Numerous parties, unconnected with Appellants, offered testimony that they had used the trail in question throughout its existence. There is substantial and competent evidence in the record supporting the district court's factual findings and we therefore affirm on this issue.

### 2. Equitable Estoppel and Quasi-Estoppel

In order to obtain equitable estoppel, a party must show:

(1) a false representation or concealment of a material fact made with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not and could not have discovered the truth; (3) an intent that the misrepresentation or concealment be relied upon; and (4) that the party asserting estoppel relied on the misrepresentation or concealment to his or her prejudice.

9

*Willig v. State, Dept. of Health & Welfare*, 127 Idaho 259, 261, 899 P.2d 969, 971 (1995). Quasi-estoppel differs from equitable estoppel, in that the first and fourth requirements of equitable estoppel are not required. *Id.* "The doctrine of quasi estoppel applies when it would be unconscionable to allow a party to assert a right which is inconsistent with a prior position." *Id.*

Appellants have alleged that the Greens should be equitably estopped from quieting title in the land due to their "secret" settlement agreement with the Rogers Family Trust, in which the Greens received a sum based upon the purchase price per acre for the contested property. Appellants argue that, through the settlement, the Greens have already received recompense for the disputed property and it would be unjust to allow them to gain title to the property itself after they had already recovered the purchase price.

The district court found that neither doctrine was applicable to the facts of this case. As to equitable estoppel, the district court determined that the Greens engaged in neither false representation nor concealment of a material fact regarding the settlement. The court further determined that the Weitzes had not been prejudiced by the settlement, as they had not changed their position in reliance on anything that the Greens did, and continued to maintain that they were the rightful owners of the property, just as they had before the settlement.

Regarding quasi-estoppel, the district court concluded that the Greens' actions in pursuing title to the property after settling with the Rogers Family Trust could not be construed as unconscionable. The Greens were under an obligation to defend the Shooks' and Castles' title to the property, pursuant to the warranty deeds and agreements their respective properties were delivered under, and the Rogers Family Trust was under an obligation to defend all of the property, as they had sold to the Greens under a warranty deed. The Greens' decision to take a settlement and defend the property themselves, rather than requiring the Rogers Family Trust to defend it, was a valid business decision, as was the Rogers Family Trust's decision to pay.

The trustee of the Rogers Family Trust testified that he settled with the Greens so that he would not have to defend their title in court, he did not testify that he was refunding a proportional purchase price because Appellants owned the property, and an examination of the Settlement and Release Agreement supports this testimony. Therefore, we affirm the district court's findings that Appellants were not entitled to relief based on either equitable estoppel or quasi-estoppel.

10

**C. The district court erred in finding that Appellants had committed slander of title against Respondents, and in awarding Respondents attorney fees on that basis below.**

"'Slander of title requires proof of four elements: (1) publication of a slanderous statement; (2) its falsity; (3) malice; and (4) resulting special damages.'" *Porter v. Bassett*, 146 Idaho 399, 405, 195 P.3d 1212, 1218 (2008) (quoting *McPheters v. Maile*, 138 Idaho 391, 395, 64 P.3d 317, 321 (2003)). Slander is "[a] defamatory assertion expressed in a transitory form." Black's Law Dictionary 660 (3rd pocket ed. 2006). A "defamatory" statement is one "tending to harm a person's reputation, [usually] by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." *Id.* at 188. "'Malice has been generally defined by Idaho courts as a reckless disregard for the truth or falsity of a statement. An action will not lie where a statement in slander of title, although false, was made in good faith with probable cause for believing it.'" *Hogg v. Wolske*, 142 Idaho 549, 557, 130 P.3d 1087, 1095 (2006) (internal citation omitted) (quoting *Weaver v. Stafford*, 134 Idaho 691, 701, 8 P.3d 1234, 1244 (2000)). Attorney fees and legal expenses incurred in removing a cloud from title constitute special damages for purposes of a slander of title claim. *Rayl v. Shull Enters., Inc.*, 108 Idaho 524, 530, 700 P.2d 567, 573 (1984).

The district court concluded that Appellants made assertions in their Amended Complaint that satisfied the first two elements of publication of a slanderous and false statement. The Amended Complaint contains allegations that Appellants, and not Respondents, are the title-holders of the property, and that Respondents trespassed on Appellants' land and caused damages. The district court found that the Amended Complaint constituted the publication of a defamatory and false statement. As to malice, the district court made the factual finding that Appellants had recklessly made numerous false statements in their Amended Complaint, including a statement that a hogwire fence on the eastern portion of the disputed property extended to intersect with another fence, when they knew that it did not.

The district court's finding as to the publication element was erroneous as a matter of law. As this Court noted in *Richeson v. Kessler*, "[w]ith certain exceptions, unimportant here, defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will not support a civil action for defamation although made maliciously and with knowledge of its falsity." 73 Idaho 548, 551-52, 255 P.2d 707, 709 (1953). If the defamatory statement was made in the course of a proceeding and had a reasonable relation to the cause of action of that proceeding, that statement may not be used as

11

the basis for a civil action for defamation. *Carpenter v. Grimes Pass Placer Mining Co.*, 19 Idaho 384, 393-94, 114 P. 42, 45 (1911). A cause of action for defamation in Idaho has very similar elements to a cause of action for slander of title; a plaintiff suing for defamation must show that the defendant: "(1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Clark v. Spokesman-Review*, 144 Idaho 427, 430, 163 P.3d 216, 219 (2007). The public policy behind granting immunity from civil defamation actions holds also for actions alleging slander of title, as has been recognized by several other jurisdictions. *See Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 13-14 (D. D.C. 1990); *Wilton v. Mountain Wood Homeowners Ass'n*, 22 Cal. Rptr. 2d 471, 473 (Cal. Ct. App. 1993).

Respondents cite to our decision in *Weaver v. Stafford*, in support of their argument that the publication requirement may be satisfied through statements made in a pleading. 134 Idaho 691, 701, 8 P.3d 1234, 1244 (2000) (stating "[h]ere, Stafford's pleadings assert an interest in Lot 16 and thus satisfy the publication element of slander of title."). We find no compelling reason why the public policy granting civil immunity for statements made in judicial proceedings as applied to defamation actions should not also apply to slander of title actions. Therefore, to the extent *Weaver* conflicts with the general rule articulated in *Richeson*, 73 Idaho at 551-52, 255 P.2d at 709, and quoted above, we overrule it.

As the finding of slander of title in this case was premised upon a statement made in the complaint, a necessary first step in litigation, where such statement was related to the underlying claim against Respondents, that statement is deemed immune. Therefore, this Court reverses the district court's determination that Appellants committed slander of title against Respondents. Accordingly, the award of $40,000 in attorney fees as special damages under the slander of title claim was improperly granted and is reversed.

**D. The trial court correctly found that Appellants committed timber trespass, but erred in holding that Idaho Code § 6-202's treble damages provision did not apply, and thus calculated damages on an incorrect basis.**

After the Weitzes had received notice, from the Greens' attorney to the Weitzes' attorney, of the Greens' claim to the disputed property, and before the dispute had been resolved, the Weitzes hired an employee to re-enter the property and build a fence along the line where the old fence had stood, and in doing so the employee cut down one large tree and many small trees. On that basis the district court found the Weitzes to have committed timber trespass, and

Respondents now argue that the district court incorrectly calculated damages and erred as a matter of law in failing to treble the damages in accordance with I.C. § 6-202.

Idaho Code § 6-202 provides, *inter alia*:

Any person who, without permission of the owner, or the owner's agent . . . cuts down or carries off any wood or underwood, tree or timber, or girdles, or otherwise injures any tree or timber on the land of another person . . . without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor or fifty dollars ($50.00), plus a reasonable attorney's fee which shall be taxed as costs, in any civil action brought to enforce the terms of this act if the plaintiff prevails.

At the time Appellants entered onto the disputed property to build (or rebuild) the fence, this lawsuit was not pending; however, Appellants had already received a letter from the Greens' counsel asserting the Greens' ownership of the property and alerting Appellants' that they were trespassing. The district court found, based upon the testimony of Consuelo Weitz and her attorney, Ronald Landeck, that Consuelo Weitz had heard from Landeck that the Greens and the Rogers Family Trust were working on a settlement agreement. Based upon this, the district court found that Consuelo Weitz believed, though unreasonably, that this anticipated settlement would cause the controversy over land ownership to disappear. Therefore, in an attempt to protect the disputed property from future claimants, or re-establish the boundary, Appellants rebuilt their "boundary fence."

Ultimately, the contested property was found to belong to Respondents, and the district court found that the Weitzes, therefore, had committed timber trespass in entering the property and cutting down trees. However, the court held that, although Consuelo Weitz was unreasonable in her belief that an anticipated settlement between the Greens and Rogers Family Trust would resolve the dispute over ownership of the property, her rebuilding of the fence did not constitute the commission of trespass in a willful, wanton, or intentional manner. Therefore, the district court held that I.C. § 6-202's treble damage award was inapplicable. We disagree.

Idaho Code § 6-202 does not contain an explicit requirement that the trespasser have acted in a willful and intentional manner. However, this requirement was read into the statute in *Menasha Woodenware Co. v. Spokane International Ry. Co.*, where this Court found the following reasoning from the California Supreme Court instructive: "While the statute does not so state in terms, it is clear, we think, that it was not intended to apply to cases in which the trespass was committed through an innocent mistake as to the boundary or location of a tract of

land claimed by the defendant." 19 Idaho 586, 593, 115 P. 22, 24 (1911) (quoting *Barnes v. Jones*, 51 Cal. 303, 305 (Cal. 1876)). *See also Earl v. Fordice*, 84 Idaho 542, 545, 374 P.2d 713, 714 (1962) (restating the standard established in *Menasha* that "it is necessary to establish the trespass was willful and intentionally committed.)[6] "Intentional" is defined as "[d]one with the aim of carrying out the act." Black's Law Dictionary 370 (3rd pocket ed. 2006). Willful is defined as "[v]oluntary and intentional, but not necessarily malicious." *Id.* at 779. It is apparent that under the facts of this case the Weitzes were not committing an innocent mistake in re-entering the property, cutting down vegetation, and erecting a fence. They had notice from the Greens that the property was in dispute. As the district court noted, to the extent Consuelo Weitz believed that an anticipated settlement between the Rogers Family Trust and the Greens would resolve the property dispute between the Weitzes and Greens, that belief was unreasonable. Based upon the record in this case we hold that the Weitzes acted willfully and intentionally, and therefore, I.C. § 6-202's trebling of damages should apply to the Weitzes' trespass.

This Court strongly disfavors the resort to forceful self-help in resolving property disputes. *See Burke v. Prudential Ins. Co. of Am.*, No. 02C5910, 2004 WL 784073, at *4 (N.D. Ill. Jan. 29, 2004) ("Self-help in litigation is not condoned by the courts."); *Doles v. Doles*, No. 17462, 2000 WL 511693, at *2 (Va. Cir. Ct. Mar. 10, 2000) ("[P]ublic policy favors the settlement of disputes by litigation rather than by self help force . . ."). When parties have entered into a conflict over real property the rights are usually fixed far in advance of the exchange of attorneys' letters, or subsequent filing of a lawsuit, motions, depositions, and hearings. Making a bold physical attempt to gain, or regain, possession or control of a real property interest, by demolishing or erecting gates or fences, bulldozing land, etc., results in no strategic advantage. Instead, passions become inflamed, positions become entrenched, damages are exacerbated rather than mitigated, and the parties end up spending far more money in litigation than their supposed interest was worth to begin with. Attorneys who counsel their clients to engage in self-help, without being certain that the respective rights and responsibilities

---

[6] In *Sells v. Robinson*, 141 Idaho 767, 774, 118 P.3d 99, 106 (2005), this standard was restated as "I.C. § 6-202 applies only where the trespass is shown to have been willful, wanton or intentional," with cites to both *Earl* and the Court of Appeals case of *Bumgarner v. Bumgarner*, 124 Idaho 629, 862 P.2d 312 (Ct. App. 1993), as authority. *Bumgarner* merely cited to *Earl*. There is no discussion in *Sells* as to why the standard is being altered, so although the *Sells* rule statement appears to alter the conjunctive standard established in *Earl* with the disjunctive standard quoted above, we find that the addition of the term "wanton," was merely a misstatement and not an intentional deviation from prior law.

14

have been settled, do their clients a disservice. Clients who ignore the advice of counsel and take matters into their own hands do themselves a disservice. In short, parties who attempt to solve a property dispute through their own forceful action do so at their own peril.

Respondents contest the amount of damages awarded by the district court, claiming that the proper replacement damages came to around $60,000, rather than the $1,500 awarded by the district court. The basis of Respondents' claim is that the trees on Respondents' property were not held as timber trees, but rather for their aesthetic value, and reasonable compensation must therefore permit Respondents to restore the property to its previous state.

Generally, an award for timber trespass has consisted of the market value of the harvested trees, as sold for lumber. *See Bumgarner v. Bumgarner*, 124 Idaho 629, 862 P.2d 321 (Ct. App. 1993). However, where the trees are held on the property not for the purpose of harvesting them as timber, but rather for their aesthetic value, an award of damages based upon the market value of the trees as timber does not properly compensate the property owner for his loss. 87 C.J.S. *Trespass* § 155 (2009) ("The measure of damages for trees which are not valuable for their timber is the injury to the land caused by destroying them. . . . The plaintiff may elect to recover either the value of the trees or for the injury to the land."). *See also* Charles T. McCormick, *Handbook on the Law of Damages* § 126, at 491 (1935). In determining the injury to the land caused by the destruction of trees, American Jurisprudence provides:

> For damages arising out of trespass to property involving destruction of trees, an owner may recover "diminution damages," that is, the loss of value of the real property or the value of the trees at the time and place of their being felled plus incidental damages, whichever is higher.

> Factors the jury may properly be instructed to consider in determining the diminished value of the plaintiffs' property as [a] result of the defendant's trespass and the cutting of trees of various kinds and sizes include the *purpose for which the particular trees were grown and maintained, the cost of replacement or restoration to the same extent that is reasonable and practicable*, and the contemplated use of the particular lands from which the trees were cut or removed, *including any aesthetic value to the landowners of such trees*.

> Under some circumstances, *the general rule for assessing damages does not wholly compensate the owner and a judicially recognized exception has been established* which, under certain conditions, will permit the recovery of damages for the loss of the intrinsic value of the trees. Thus the proper measure of damages for the wrongful destruction of ornamental or shade trees, which did not decrease the market value of the land, is *the intrinsic value of the trees removed*.

75 Am. Jur. 2d *Trespass* § 106 (2010) (emphasis added).  Awarding restoration damages in cases where the value of the trees as timber, or the diminution in market value of the land, would provide insufficient compensation has further support in the Second Restatement of Torts, which provides that:

> If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for (a) the difference between the value of the land before the harm and the value after the harm, *or at his election in an appropriate case*, *the cost of restoration that has been or may be reasonably incurred*, (b) the loss of use of the land, and (c) discomfort and annoyance to him as an occupant.

Rest. (Second) of Torts § 929 (1979) (emphasis added).  The public policy behind factoring in the costs of replacement or restoration in calculating damages associated with the injury to the land was explained by the Court of Appeals of Wisconsin in *Threlfall v. Town of Muscoda*, as follows:

> *An owner of real estate has a right to enjoy it according to his own taste and wishes,* and the arrangement of buildings, shade trees, fruit trees, and the like may be very important to him . . . and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated, and yet the arrangement so selected by him ... might not meet the taste of others, and the disturbance of that arrangement, therefore, might not impair the general market value. *[W]hile the owner may be deprived of something valuable to him, . . . yet he might be wholly unable to prove any . . . depreciation of the market value of the land. The owner of property has a right to hold it for his own use . . . and . . . he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale.*

527 N.W.2d 367, 372 (Wis. App. 1994) (quoting *Gilman v. Brown*, 91 N.W. 227, 229 (Wis. 1902)).

In *Alesko v. Union Pacific R. Co.*, this Court stated that "[e]ven though the injury be only temporary[,] if the cost of restoration exceeds the value of the premises in their original condition, or the diminution in market value[,] the latter are the limits of recovery."  62 Idaho 235, 241, 109 P.2d 874, 877 (1941).  However, in *Nampa & Meridian Irrigation District v. Mussell*, we held that, as "the goal of the law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered, the rule precluding recovery of restoration costs in excess of the diminution in value is not of invariable application."  139 Idaho 28, 33-34, 72 P.3d 868, 873-74 (2003).  *See also* Rest. (Second) of Torts § 901 cmt. a (1979) ("[T]he law of torts attempts primarily to put an injured person in a position as nearly as possible equivalent to his position

16

prior to the tort."). In *Mussell*, Mussell had excavated on his land, compromising the lateral support for an easement that an irrigation district held for the purpose of carrying water across Mussell's property. 139 Idaho at 30-31, 72 P.3d at 870-71. In order to repair the land so that it could continue transporting water across the property, the district installed a concrete pipeline to carry the water. *Id.* at 31, 72 P.3d at 871. We held that, as the easement in question had value to the district only for its ability to transmit water as part of the irrigation district's larger water distribution system, "[t]he cost of repairing or restoring the [easement] is a more appropriate measure of damages than is the decrease in the market value of the easement." *Id.* at 34, 72 P.3d at 874.

Idaho is not alone in allowing a deviation from the diminution-in-market-value limitation. The Supreme Court of Colorado held that "different measures of damages, including the cost of restoring the property to its original condition, may be appropriate under certain circumstances if the actual loss suffered is to be truly compensated. . . ." *Bd. of County Comm'rs v. Slovek*, 723 P.2d 1309, 1314-15 (Colo. 1986). In *Slovek*, the property owner, Slovek, had his property greatly damaged when the negligent actions of the County caused Slovek's property to become flooded. 723 P.2d at 1311-12. Slovek provided competent expert testimony that it would cost between $68,900 and $119,300 to repair the damage, and $93,000 to protect against future erosion, but the trial court awarded only the $14,000 called for under the diminution-in-market-value calculation. *Id.* at 1312-13. In holding that the appropriate calculation of damages was that necessary to repair or restore Slovek's property, the Court noted that, although it is impossible to establish a precise formula, some factors to consider in determining whether to deviate from the diminution-in-market-value limitation are:

> [T]he nature of the owner's use of the property – in particular, whether the owner uses the property as a personal residence, whether the owner has some personal reason for having the property in its original condition, or both – and the nature of the injury – in particular, whether the injury is reparable and at what cost.

*Id.* at 1315 (citing Rest. (Second) of Torts § 929 cmt. b (1979)). Finally, the Court noted that it would be preferable for the trial court to make a determination as to the proper measure of damages, in its discretion, including an articulation of the reasons for its decision, in order to facilitate effective appellate review. *Id.* at 1316. The Court then remanded for a determination as to the proper measure of damages with this admonition:

> Obviously, to the extent that a property owner is allowed to recover costs of restoration that are greater than the diminution in market value, there is the

17

possibility that the owner will receive a monetary windfall by choosing not to restore the property and by selling it instead, profiting to the extent that restoration costs recovered exceed the diminution of market value. The problem is no different, except in degree, if restoration costs are allowed in an amount exceeding the pre-tort value of the property. These possibilities suggest the need for careful evaluation by the trial court to assure that any damages allowed in excess of either of these two measures are truly and reasonably necessary to achieve the cardinal objective of making the plaintiff whole.

*Id.* at 1317.

Likewise, in *Orndorff v. Christiana Community Builders*, the California Court of Appeals held that restoration or repair costs may be awarded, even where they exceed the diminution of market value, "'if "there is a reason personal to the owner for restoring the original condition", (Rest.2d Torts, § 929, com. b, at pp. 545-546), or "where there is a reason to believe that the plaintiff will, in fact, make the repairs" (22 Am.Jur.2d, Damages, § 132, at p. 192).'" 217 Cal. App. 3d 683, 687 (Cal. Ct. App. 1990) (quoting *Heninger v. Dunn*, 101 Cal. App. 3d 858, 863 (Cal. Ct. App. 1980)).

Many jurisdictions have placed great protection on a property owner's right to "enjoy the aesthetic value of trees and shrubbery, notwithstanding the fact they may have little commercial value or that their destruction may, indeed, even enhance the market value of the property" allowing for restoration or replacement costs. *Heninger*, 101 Cal. App. 3d at 864. *Accord* Arkansas (*Laser v. Jones*, 172 S.W. 1024 (Ark. 1915)); Connecticut (*Eldridge v. Gorman*, 60 A. 643 (Conn. 1905)); Florida (*Ragland v. Clarson*, 259 So.2d 757 (Fl. Dist. Ct. App. 1972)); Illinois (*Roark v. Musgrave*, 355 N.E.2d 91 (Ill. App. Ct. 1976)); Kansas (*Nordgren v. Sw. Bell Tel. Co.*, 262 P. 577 (Kan. 1928)); Kentucky (*Louisville & N.R. Co. v. Beeler*, 103 S.W. 300 (Ky. Ct. App. 1907)); Louisiana (*Turner v. S. Excavation, Inc.*, 322 So.2d 326 (La. Ct. App. 1975)); Maryland (*Samson Constr. Co. v. Brusowankin*, 147 A.2d 430 (Md. 1958)); Minnesota (*Rector, etc. v. C.S. McCrossan, Inc.*, 235 N.W.2d 609 (Minn. 1975)); New Jersey (*Huber v. Serpico*, 176 A.2d 805 (N.J. Super. Ct. App Div. 1962)); Oklahoma (*Chicago R.I. & P. Ry. Co. v. Swinney*, 159 P. 484 (Okla. 1916)); South Carolina (*Babcock v. Postal Tel.-Cable Co.*, 109 S.E. 116 (S.C. 1921)); and Texas (*Stephenville, N. & S.T. Ry. Co. v. Baker*, 203 S.W. 385 (Tex. Civ. App. 1918)).

Here the record demonstrates that Appellants were on constructive notice that Respondents intended to maintain the forest in substantially the same state, as Section V of the Restrictive Covenants filed pursuant to the Greens' sales to the Shooks and Castles had been

filed with Latah County in December 2002, and stated, *inter alia*, "[r]etention of the existing forest is of vital importance to maintaining the natural environment of the area and is viewed as a primary objective of these Restrictive Covenants." Individuals may value land for specific and personal reasons, and in such instances justice requires that an award for damages restore these property owners to the position they enjoyed prior to a tortfeasor's interference. In instances where the property owners have been deprived of a key interest in their property, but such injury does not diminish the property's market value, reasonableness and practicality provide more appropriate limits upon an award for restoration costs, as noted in *Threlfall v. Muscoda*:

> [T]he diminished-market-value rule would leave the plaintiffs without a remedy for the [tortfeasor]'s damage to their use of their property. To leave them without a remedy "would be to decide that by the wrongful act of another, [they] may be compelled to accept a change in the physical condition of [their] property, or else perform the work of restoration at [their] own expense."

527 N.W.2d 367, 373 (Wis. App. 1994) (quoting *Heninger v. Dunn*, 101 Cal. App. 3d 858, 864 (Cal. Ct. App. 1980)).

It is apparent that the district court based its award upon the market value of the destroyed trees as merchantable timber; however, evidence clearly demonstrates that the trees were not cultivated for such use.

Based on the foregoing, we vacate the district court's determination of damages, and remand with instructions for the district court, as fact finder, to calculate damages, which shall be trebled, and award reasonable attorney fees in accordance with I.C. § 6-202.

**E. Attorney Fees**

Both parties have requested attorney fees on appeal. As Appellants are not the prevailing party they are not entitled to attorney fees on appeal. Respondents claim that, as attorney fees are considered special damages under a slander of title claim, and as Respondents were awarded attorney fees below on that basis, they are also entitled to attorney fees on appeal in defending their title. As this Court has held that the district court's determination regarding slander of title was erroneous, and has been reversed, attorney fees may not be awarded on this basis. However, Respondents also ask that if this Court finds I.C. § 6-202 to have been applicable in determining damages for Appellants' trespass, attorney fees be granted in accordance with that statute. Having found that I.C. § 6-202 applies, we grant attorney fees on appeal to Respondents, and remand to the trial court with instructions to award Respondents reasonable attorney fees under I.C. § 6-202 for the proceedings below.

19

## V. CONCLUSION

We now affirm the district court's judgment in part, reverse in part, and remand. We affirm as to the denial of Appellants' Motion to Amend below, and as to the finding that Appellants failed to prove their claims of estoppel and laches, prescriptive easement, and quasi-estoppel. We affirm as to the finding that Respondents were bona fide purchasers for value who purchased without notice of any boundary by agreement and are therefore not subject to such an agreement. We affirm that Appellants committed trespass in removing trees and vegetation from Respondents' property, but reverse the district court's finding that Respondents were not entitled to treble damages under I.C. § 6-202. We vacate and remand on the issue of appropriate damages for the timber trespass. We reverse as to the finding that Appellants had committed slander of title, and reverse the trial court's award of attorney fees on that basis, instructing the trial court on remand to award reasonable attorney fees under I.C. § 6-202 for the proceedings below. Costs and attorney fees to Respondents.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**