# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43547

GREEN RIVER RANCHES, LLC, )
)
    Plaintiff, )
)
v. )
)   **Twin Falls, May 2017 Term**
SILVA LAND COMPANY, LLC, )
)   **2017 Opinion No. 77**
    Defendant. )
-------------------------------------------------------- )   **Filed: June 29, 2017**
JACK MCCALL, )
)   **Karel A. Lehrman, Clerk**
    Plaintiff-Respondent, )
)
v. )
)
SILVA DAIRY, LLC, an Idaho limited )
liability company, )
)
    Defendant-Appellant, )
and )
)
MAX SILVA, an individual, )
)
    Defendant. )
_____ )

Appeal from the District Court of the Fifth Judicial District of the
State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

The district court's dismissal of Silva Dairy's claim is <u>affirmed</u>.
Attorney fees and costs on appeal are <u>awarded</u> to respondent.

Mayness, Taggart, PLLC, Idaho Falls, attorneys for appellant Silva
Dairy, LLC. Steven Taggart argued.

Givens Pursley LLP, Boise, attorneys for respondent Jack McCall.
Bradley J. Dixon argued.

_____

JONES, Justice

# I. NATURE OF THE CASE

This is a companion case to *Green River Ranches, LLC v. Silva Land Company, LLC*, Docket No. 43548. In an appeal arising out of Twin Falls County, Appellant Silva Dairy, LLC ("Silva Dairy"), challenges a district court's holding that Silva Dairy's claim against Respondent Jack McCall ("McCall") for herd management services is offset by amounts that Silva Dairy owes McCall for feed expenses and pasture rent. McCall owns a livestock business and used Silva Dairy's herd management services. The district court found that McCall's total claims against Silva Dairy were at least $492,464.77 and exceeded Silva Dairy's claim by $287,487.12. Accordingly, the district court dismissed Silva Dairy's claim with prejudice. We affirm the district court's judgment.

# II. FACTUAL AND PROCEDURAL BACKGROUND

Between 2009 and 2012, McCall, Silva Dairy, members of the Silva family, and related business entities owned by McCall or members of the Silva family engaged in various cattle-related business transactions. The transactions relevant to this appeal are: (1) Silva Dairy's management of McCall's herd; (2) McCall's provision of feed to Silva Dairy; and (3) Silva Dairy's pasture rental from McCall. In 2010, Silva Dairy filed for Chapter 12 bankruptcy. Thereafter, McCall began removing himself from the parties' business relationship. Litigation ensued between the individuals and their business entities.

Three actions were consolidated below. First, on March 27, 2013, Green River Ranches, LLC, an entity owned in large part by McCall, sued Silva Land Company, LLC seeking payment on a loan made in 2009. Second, McCall sued Max Silva for damages related to the sale of 101 cattle, and Silva Dairy filed a third party complaint against McCall alleging that it was owed over $245,000 for the management of McCall's herd. Third, McCall sued Silva Dairy for, *inter alia*, conversion of feed, pasture rent, and feed payment.

It is important to note that because Silva Dairy filed a Chapter 12 bankruptcy proceeding in August 2010, and later entered a confirmed Chapter 12 plan, the district court's analysis of McCall's claims against Silva Dairy was limited to whether they offset Silva Dairy's claim against McCall. Indeed, the parties agreed that affirmative relief could not be awarded against Silva Dairy and that the district court was to determine whether Silva Dairy's claim exceeded McCall's claims.

2

This case illustrates the problems that arise when businessmen fail to formalize oral agreements with written contracts. The parties formed a series of vague oral agreements and planned on settling up at a later date. Their business relationship soured and, unsurprisingly, they were unable to settle their respective debts. Needless to say, the fact that Silva Dairy filed bankruptcy did not simplify matters. The undisputed facts are sparse and left the district court, as the fact-finder, in the difficult position of untangling the oral agreements. Between April 2010 and August 2012, McCall placed his herd under the management of Silva Dairy. There was not a written agreement between the parties concerning the management fee McCall was to pay Silva Dairy; however, the parties agreed that McCall was required to provide feed for his cattle. Silva Dairy managed its own cattle at the same time it managed McCall's cattle, stored its own feed in the same location where McCall's feed was stored, and fed McCall's feed to Silva Dairy cattle. While both parties understood that neither was obligated to provide feed for each other's cattle, both parties acknowledged that the feed was commingled and fed to both herds. Indeed, the herd nutritionist admitted that McCall's feed and Silva Dairy's feed were intentionally mixed to achieve a desired balance of nutrients. In the spring of 2012, McCall observed that his feed costs were exorbitant; however, he continued to supply feed until August 2012, when he removed his cattle from Silva Dairy's management. Separately, between June 2011 and August 2012, cattle owned by Silva Dairy were placed on property owned or leased by McCall. The parties did not have an agreement as to the pasture rental fee.

The district court held two bench trials. The first bench trial, held on June 26 and 27, 2014, determined whether either party was liable for damages on the various claims. In a memorandum opinion, the district court concluded as follows, in pertinent part: (1) Max Silva owed McCall for unpaid pasture rent; (2) McCall owed Silva Dairy for approximately two years of herd management fees; and (3) McCall was permitted to offset his management fee liability with his feed conversion claim.

The second bench trial, held on June 24–26, 2015, determined the amount of damages. The district court issued a memorandum opinion and corresponding judgment on July 16, 2015. First, the district court held that Silva Dairy was entitled to $204,977.65 for managing McCall's herd. Second, the district court revised its previous holding that Max Silva was personally liable for McCall's pasture rent claim. The district court held that Silva Dairy was actually liable for the pasture rent after learning that the "MS" brand that was on the pastured cattle stood for

"Manuel Silva and Sons," which was Silva Dairy's brand. Previously, the district court was under the impression that "MS" stood for Max Silva. The district court concluded that credible testimony from McCall and his pasture manager proved the dates the cattle were pastured and the associated costs. Accordingly, the district court held that Silva Dairy's management fee would be offset by $52,386.90 for the pasture rent. Third, the district court concluded that McCall was owed $40,067.87 for feed purchases he made for Silva Dairy's cattle. Fourth, the district court addressed McCall's claim that Silva Dairy had converted his feed. The district noted as follows:

> The parties spent an [sic] substantial amount of time . . . attempting to prove their claims [with] theoretical calculations of what cattle should have eaten, what they should have been fed, and what the feed was worth over the 28 months . . . . Unfortunately, there is little, if any, hard evidence of the amount of McCall's feed consumed by Silva Dairy cattle, and vice versa. That fact, however, does not preclude the [c]ourt from determining whether there is merit to McCall's claim.

The district court found "several problems with McCall's methodology" in calculating that he was owed $881,864 for feed that was converted. However, the district court found the testimony of McCall's expert, Mr. Onaindia, to be "**extremely credible**." (Emphasis in original). Mr. Onaindia, an experienced banker and dairyman, estimated that an $800,000 to $900,000 gap existed between the value of feed McCall purchased and the value of McCall's feed that remained in Silva Dairy's possession, less the value of the amount of feed that should have been fed to McCall's cattle. The district court accepted Mr. Onaindia's calculation and deducted the remaining feed inventory, $386,047, from $800,000 to conclude that Silva Dairy converted "**at least**" $413,953 of McCall's feed. (Emphasis in original). In sum, the district court dismissed Silva Dairy's herd management claim with prejudice because it was more than offset by McCall's claims. Silva Dairy appealed.

### III. ISSUES ON APPEAL

1.  Did the district court err in concluding that Silva Dairy converted $413,953 worth of McCall's feed and that such amount offset McCall's herd management liability to Silva Dairy?

2.  Did the district court err in holding Silva Dairy liable for McCall's $52,386.90 pasture rent claim?

3.  Did the district court abuse its discretion in declining to award Silva Dairy costs and attorney's fees?

4.  Is either party entitled to costs and attorney's fees on appeal?

4

## IV. STANDARD OF REVIEW

On review by this Court, a trial court's conclusions following a bench trial will be limited to a determination of whether the evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law. *Oregon Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 50, 218 P.3d 391, 394 (2009). This Court will "liberally construe the trial court's findings of fact in favor of the judgment entered, as it is within the province of the trial court to weigh conflicting evidence and testimony and judge the credibility of witnesses." *Id.*; *see also Beckstead v. Price*, 146 Idaho 57, 61, 190 P.3d 876, 880 (2008) (regarding findings of fact in view of the trial court's role as trier of fact). This Court will not disturb findings of fact on appeal that are supported by substantial and competent evidence, even if there is conflicting evidence at trial. *Panike & Sons Farms, Inc. v. Smith*, 147 Idaho 562, 565–66, 212 P.3d 992, 995–96 (2009). Only erroneous findings will be set aside. *Id.* at 565, 212 P.3d at 995. Also, this Court has always held that its view of the facts will not be substituted for that of the trial court. *See Weitz v. Green*, 148 Idaho 851, 857, 230 P.3d 743, 749 (2010). Finally, conclusions of law are freely reviewed by this Court, drawing its own conclusions from the facts presented in the record. *Griffith v. Clear Lakes Trout Co.*, 146 Idaho 613, 619, 200 P.3d 1162, 1168 (2009).

*Watkins Co., LLC v. Storm*, 152 Idaho 531, 535, 272 P.3d 503, 507 (2012). "'Substantial and competent evidence' is 'relevant evidence which a reasonable mind might accept to support a conclusion.'" *Lamar Corp. v. City of Twin Falls*, 133 Idaho 36, 42–43, 981 P.2d 1146, 1152–53 (1999) (quoting *Mancilla v. Greg*, 131 Idaho 685, 687, 963 P.2d 368, 370 (1998)).

## V. ANALYSIS

**A.    The district court did not err in concluding that Silva Dairy converted $413,953 worth of McCall's feed and that such amount offset McCall's herd management liability to Silva Dairy.**

Silva Dairy argues that the district court erred in concluding that McCall's liability for the herd management fee was offset by Silva Dairy's feed conversion liability. Silva Dairy's argument can be distilled to the following two assertions: (1) Silva Dairy did not exercise wrongful dominion over the feed necessary to find conversion; and (2) McCall never proved that the alleged converted feed was missing. In support of its first assertion, Silva Dairy claims that its use of McCall's feed did not amount to wrongful dominion because McCall knew that his feed was mixed with Silva Dairy feed, per the suggestion of the herd nutritionist. Silva Dairy claims that this case is similar to *Torix v. Allred*, 100 Idaho 905, 606 P.2d 1334 (1980), wherein this Court held that the wrongful dominion element of conversion was not satisfied because the

5

plaintiff had placed cattle in the defendant's possession and specifically authorized the defendant to sell those cattle.

In support of its second assertion—that McCall never proved the alleged converted feed was missing—Silva Dairy attacks the district court's reliance on Exhibit 132, which was prepared by McCall and purports to calculate his feed purchases, the amount of feed consumed by his cattle, and the amount of feed that was left at the time the parties ended their business relationship. It is noteworthy that Silva Dairy did not challenge the admission of Exhibit 132; however, perhaps it should have considering that all of the attacks on appeal would have been appropriate objections below. Raising them now, however, is useless because Exhibit 132 has been properly admitted into evidence.

McCall makes two assertions in support of his position that the district court did not err in concluding that Silva Dairy converted $413,953 worth of his feed. First, McCall argues that, although he provided the feed to Silva Dairy and knew that the feed was being mixed with Silva Dairy's feed, Silva Dairy's unauthorized depletion of his feed inventory below the total amount of feed that he had deposited, less the amount consumed by his cattle, amounted to conversion. Second, McCall asserts that the district court's conclusion that Silva Dairy converted $413,953 worth of feed is supported by substantial and competent evidence. McCall concedes that conflicting evidence existed, but argues that the district court was in the best position to determine the weight of that evidence and the credibility of the witnesses.

> Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time. The act must be essentially tortious, but it is not essential to conversion sufficient to support the action of trover that the defendant should have complete manucaption of the property, or that he apply the property to his own use, if he has exercised dominion over it, in exclusion of, in defiance of, or inconsistent with the owner's right.

*Carver v. Ketchum*, 53 Idaho 595, 601, 26 P.2d 139, 141 (1933) (citation omitted). In short, conversion is "a dealing by a person with chattels not belonging to him, in a manner inconsistent with the rights of the owner." *Id.*

In *Torix v. Allred*, Allred, the defendant-respondent, operated a feedlot to which cattle owners would send their cattle to be fattened up before being sold. 100 Idaho 905, 906, 606 P.2d

6

1334, 1335 (1980). Allred was specifically authorized by Torix to sell certain cattle to a meatpacker, who, unbeknownst to both Allred and Torix, was insolvent. *Id.* at 907, 606 P.2d at 1336. After not receiving payment for the sale of his cattle, Torix sought recovery from Allred arguing, *inter alia*, that Allred was liable for the conversion of the cattle. *Id.* at 910, 606 P.2d at 1339. The district court held that Allred had not exerted wrongful dominion over the cattle because Torix had specifically authorized Allred to sell the cattle to the buyer. Accordingly, the district court found that Allred had not converted Torix's cattle. *Id.* at 909, 606 P.2d at 1338. This Court affirmed the district court's judgment, finding that Torix had failed to establish that Allred had wrongfully exerted dominion over the cattle because Allred was "specifically authorized . . . to sell the cattle." *Id.* at 910, 606 P.2d at 1339.

The Restatement Second of Torts discusses conversion in the context of grain storage as follows:

> In many grain-producing states a long standing custom authorizes proprietors of grain elevators to mingle grain of various owners. Under such circumstances, unless a depositor forbids the commingling, the warehouseman is not liable for a conversion of grain by reason of the mere fact that it is mixed with grain of similar kind and quality. The warehouseman, however, must at all times retain sufficient grain to meet the demands of all depositors, and if he disposes of so much grain as to reduce the amount in his possession below the total quantity deposited, he becomes liable to each depositor . . . for the conversion of such depositor's proportional share of the deficiency.

Restatement (Second) of Torts § 226 cmt. e (1965).

The district court found that McCall had deposited feed with Silva Dairy with authorization to commingle the feed with Silva Dairy's feed and feed it to McCall cattle. Further, the district court found that McCall was aware that the commingled feed was being fed to both McCall and Silva Dairy cattle. However, when McCall terminated the business relationship, there was a significant deficiency in his feed. Although McCall knew Silva Dairy was mixing his feed with its feed at the suggestion of the nutritionist, he did not authorize Silva Dairy to deplete his inventory below the amount that he had deposited, less the feed consumed by his cattle. Accordingly, the district court found that Silva Dairy was liable for the conversion of McCall's feed. It is important to note that Silva Dairy did not convert McCall's feed in the traditional sense of the word, *i.e.*, taking or keeping a plaintiff's property without the right to do so. Rather, the district court found that Silva Dairy committed a different form of conversion by failing to return borrowed property. Although Silva Dairy is neither a proprietor of a grain elevator, nor a

7

warehouseman, the reasoning from the Restatement applies here; that is, Silva Dairy committed conversion when it failed to retain sufficient feed to meet the demand of the depositor, McCall, less the amount fed to McCall's cattle.

The district court's finding that Silva Dairy converted McCall's feed is supported by substantial and competent evidence. McCall provided the district court with feed invoices and profit and loss statements for 2010–2012, as well as a feed conversion analysis. The district court expressed concern regarding the accuracy of McCall's calculations, but found McCall's expert, Mr. Onaindia, to be "extremely credible." Mr. Onaindia testified that according to his review of the McCall's financial documents and his own understanding of budgeting and costs of feed, approximately $800,000 to $900,000 worth of feed, less the remaining amount in Silva Dairy's possession, was missing. Mr. Onaindia acknowledged that he did not have every single one of McCall's feed invoices, but stated that his "30-plus years in the industry," together with his review of McCall's financial documents, enabled him to determine the amount of feed McCall purchased during the time in question. Next, Mr. Onaindia relied on his experience and review of the nutritionist's recommendations to determine the amount of feed McCall's cattle consumed during the time in question. Lastly, Mr. Onaindia testified that Silva Dairy's financial documents revealed that it was paying significantly less than it should have to feed its own cattle. After reviewing the testimony, the district court accepted Mr. Onaindia's opinion as factual and accurate. The district court concluded that Silva Dairy converted "**at least** $413,953 of McCall's feed" after deducting the ending inventory, $386,047, from Mr. Onaindia's lower number, $800,000. (Emphasis in original).

Silva Dairy's assertion that here, as in *Torix*, the element of wrongful dominion was absent because McCall placed the feed in Silva Dairy's possession with authorization to use the feed is unpersuasive. In *Torix*, Allred was specifically authorized to sell Torix's cattle to the buyer. 100 Idaho 905, 909, 606 P.2d 1334, 1338 (1980). Here, while McCall understood that his feed was being commingled with Silva Dairy's feed, and as a result some of his feed would be fed to Silva Dairy's cattle, he never authorized Silva Dairy to deplete his deposit more than that which was used for McCall's cattle. Silva Dairy was required to retain enough inventory to meet McCall's demand, less the feed used for McCall's cattle.

Silva Dairy asserts that the district court's conclusion is undermined by the inaccuracies in McCall's calculations. Specifically, Silva Dairy argues that the feed invoices and the

8

calculations of feed consumed by the cattle do not support the district court's conclusion that McCall's feed was converted. As previously noted, Silva Dairy stipulated to the admission of the evidence that it now attacks, namely, Exhibit 132. Exhibit 132 was properly admitted to the record; accordingly, the district court was entitled to consider it. Silva Dairy's assertion would be persuasive had the district court blindly relied upon McCall's calculations, but that is not the case. Mr. Onaindia testified based on his review of McCall's financial documents, and crucially, his own knowledge of budgeting and cost of feed. The district court was in the best position to weigh conflicting evidence and judge the credibility of Mr. Onaindia. In sum, we affirm the district court's conclusion that Silva Dairy converted at least $413,953 worth of McCall's feed. However, due to Silva Dairy's bankruptcy, McCall is not entitled to a $413,953 judgment; rather, Silva Dairy's claim against McCall is offset by $413,953.

**B.     The district court did not abuse its discretion in transferring the pasture rent claim from Max Silva to Silva Dairy.**

Silva Dairy argues that the district court erred in transferring the pasture rent obligation from Max Silva to Silva Dairy. Silva Dairy explains that McCall's attempt to amend his complaint against Silva Dairy to include a claim for pasture rent was denied by the district court; accordingly, Silva Dairy asserts that the district court erred in reassigning the pasture rent obligation to Silva Dairy without complying with the requirements of Idaho Rule of Civil Procedure 15(b).

McCall argues that the district court did not err in holding Silva Dairy liable for the pasture rent claim. McCall explains that the issue of whether Max Silva or Silva Dairy was liable for the pasture rent was tried before the district court in June 2015, and Silva Dairy did not object to testimony related to this issue as an unpleaded issue under Idaho Rule of Civil Procedure 15(a). McCall argues that because Silva Dairy did not object to the evidence, the issue was tried by implied consent under Idaho Rule of Civil Procedure 15(b)(2), and the district court's holding should not be reversed.

Idaho Rule of Civil Procedure 15(b), as it existed at the time of trial, provides as follows in pertinent part:

> When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made

upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

I.R.C.P. 15(b) (2015) (amended 2016).

> "The requirement that the unpleaded issues be tried by at least the implied consent of the parties assures that the parties have notice of the issues before the court and an opportunity to address those issues with evidence and argument." *M.K. Transp., Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980). "The determination whether an issue has been tried with the consent of the parties is within the trial court's discretion, and such determination will only be reversed when that discretion has been abused." *Lindberg v. Roseth*, 137 Idaho 222, 226, 46 P.3d 518, 522 (2002).

*Vreeken v. Lockwood Engineering, B.V.*, 148 Idaho 89, 106, 218 P.3d 1150, 1167 (2009).

> "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000).

*State v. Jones*, 160 Idaho 449, 450, 375 P.3d 279, 280 (2016).

Silva Dairy's argument is puzzling because it claims that the denial of McCall's motion to amend his complaint to add Silva Dairy as a defendant to the pasture rent claim should preclude the district court from reassigning the claim. However, after the motion to amend was denied, the district court issued a pre-trial order stating, *inter alia*, "the issues to be tried to the [c]ourt starting on June 26, 2014 shall be limited to the following: . . . (8) Which party, if any, entered into a pasture agreement with McCall . . . and thereby allegedly incurred an outstanding debt owed to McCall . . . ?" Thus, the district court did not, as Silva Dairy claims, limit its analysis to whether only Max Silva was liable for the pasture rent; rather, it considered all parties.

Turning to the crux of this issue, Silva Dairy has failed to demonstrate, or even attempt to demonstrate, that an abuse of discretion occurred under any part of the test applied by this Court. Silva Dairy makes the conclusory claim that the transfer of the pasture rent obligation from Max Silva to Silva Dairy "is inconsistent with I.R.C.P. 15(b)." It is Silva Dairy's burden to demonstrate that an abuse of discretion occurred, and its failure to do so is fatal to its argument.

**C.      The district court did not err in declining to grant attorney's fees to Silva Dairy below.**

Silva Dairy did not prevail below, and we affirm the district court's judgment. Accordingly, the district court did not err in declining to grant attorney's fees to Silva Dairy.

**D.      McCall is entitled to costs and attorney's fees on appeal.**

Silva Dairy argues that it is entitled to attorney's fees on appeal pursuant to Idaho Appellate Rule 41(a). McCall argues that he is entitled to attorney's fees on appeal pursuant to Idaho Appellate Rule 40 and 41 and under Idaho Code section 12-120(3) because he is the prevailing party in a commercial transaction.

> Idaho Code section 12-120(3) mandates that when "the gravamen of a lawsuit" is a commercial transaction, the prevailing party is entitled to attorney's fees. *Kugler v. Nelson*, 160 Idaho 408, 413, 374 P.3d 571, 579 (2016). Under the statute, a "commercial transaction" is any "transaction[] except transactions for personal or household purposes." I.C. §12-120(3).

*Prehn v. Hodge*, 161 Idaho 321,___, 385 P.3d 876, 886 (2016).

Silva Dairy did not prevail on appeal; accordingly, Silva Dairy's request for attorney's fees on appeal is denied. McCall prevailed on appeal and requested attorney's fees pursuant to Idaho Code section 12-120(3). The cattle-related agreements were clearly commercial transactions and were not for personal or household purposes. Accordingly, as the prevailing party, McCall is entitled to costs and attorney's fees on appeal.

## VI. CONCLUSION

We affirm the judgment of the district court. Costs and attorney's fees on appeal are awarded to McCall.

Justices EISMANN, HORTON and Justices *pro tem* KIDWELL and CRABTREE CONCUR.