# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48538

GREENFIELD FAMILY TRUST, )
)
   Plaintiff-Appellant, )
)
v. )
)
OLIVE FOUNTAIN LAND COMPANY, )
LLC, an Idaho limited liability company; )
KOOTENAI COUNTY, a political subdivision )
of the State of Idaho, )
)
)
   Defendants-Respondents. )
_____ )
GREENFIELD FAMILY TRUST, )
)
   Plaintiff-Counterdefendant, )
)
v. )
)
OLIVE FOUNTAIN LAND COMPANY, )
LLC, an Idaho limited liability company; )
)
   Defendant-Counterclaimant. )

Moscow, April 2022 Term

Opinion filed: August 22, 2022

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Richard S. Christensen, District Judge.

The judgment of the district court is <u>affirmed</u>.

Roberts Freebourn, PLLC, Spokane WA, and Mooney Wieland PLLC, Boise, for Appellant. Chad Freebourn argued.

Winston & Cashatt Lawyers, PS, Coeur d'Alene, and Kootenai County Prosecutor's Office, Coeur d'Alene, for Respondents. Benjamin H. Rascoff argued.

_____

MOELLER, Justice.

This appeal arises from a civil trespass trial between Olive Fountain Land Company, LLC ("Olive Fountain"), and Greenfield Family Trust ("Greenfield Trust"), which own neighboring

1

properties along Lake Coeur d'Alene in Kootenai County. Olive Fountain had permission to construct an easement road across Greenfield Trust's land to access its undeveloped property. However, portions of the construction did not occur along the agreed and specified boundaries of the easement. Additionally, logs from the construction were sold by Olive Fountain's agent in violation of an earlier easement agreement requiring any trees removed from the right of way to remain on Greenfield Trust's property.

Following a four-day bench trial, the district court determined that by partially constructing a road across Greenfield Trust's property outside the easement boundaries, Olive Fountain had committed a willful and intentional trespass under Idaho Code section 6-202. The court also determined there was a timber trespass, which entitled Greenfield Trust to recover treble damages from Olive Fountain. However, when addressing civil trespass damages, the court found the testimonial evidence on property damages from Greenfield Trust's witnesses to be neither credible nor reasonable, and only awarded $50 in nominal damages. Greenfield Trust timely appealed. It challenges the district court's order, arguing that the court erred and abused its discretion in refusing to award damages for the diminution in property value. For the following reasons, we affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Greenfield Trust owns approximately 144 acres of property on the west side of Lake Coeur d'Alene. It is largely undeveloped land consisting of an old driveway, an "abandoned old farmhouse," and "dilapidated" outbuildings. The eastern property line borders the lake, with most of the remaining land set back from the water. Greenfield Trust's beneficiaries and trustees are twin brothers, Dwight and Monroe Greenfield, who inherited the land through their mother, Cecilia Greenfield.

Northeast of Greenfield Trust's property is a twenty acre parcel owned by Olive Fountain. It consists of undeveloped and forested acreage with steep and rocky terrain on its north side and leads down to the lakeshore on the eastern boundary. Olive Fountain's members are Steve and Laura Thurn (husband and wife), and John Fountain. Laura and John are siblings, as well as the cousins of Dwight and Monroe Greenfield.

Historically, the acreage owned by Olive Fountain and Greenfield Trust was owned by Charlie Greenfield, the grandfather of Laura, John, Dwight, and Monroe. It was a homestead property made up of multiple parcels that has remained in the family for several generations. At

2

Charlie's death, the property was divided into three parcels for each of his three children. Charlie's eldest son developed his parcel into the Harbor View subdivision north of Greenfield Trust and Olive Fountain properties. Charlie's daughter, Olive Fountain (Laura and John's mother and the namesake of her children's LLC), inherited a second parcel, which remained undeveloped. Dwight and Monroe's parents inherited the third parcel, which is now in the name of Greenfield Trust.

In 2007, Greenfield Trust, through its trustee Cecilia, conveyed an express easement to Olive Fountain's predecessors in interest, Laura and John, to provide ingress and egress to their twenty-acre parcel from the public Hull Loop Road. The district court summarized the easement as follows: "This easement was to run east from West Hull Loop Road along the north boundary of the Trust property. Then it would drop south near the center of the Trust property, skirt a ridge, and then turn east again to the Olive Fountain property." The 2007 easement agreement between Olive Fountain and Greenfield Trust provided for the "construction, use, repair, maintenance, and replacement of [this] private roadway . . . providing access, ingress, and egress, between all parts of [Olive Fountain's] property and Hull Loop Road" with "reasonable pedestrian and vehicular traffic." The easement included the right to install utilities. The agreement also expressly required: "All timber removed from the Burdened Property during construction shall be cut and stacked at the Grantees' expense. Any such timber shall remain the property of the Grantor and shall be removed from the area at the convenience and expense of the Grantor."

The purpose of the easement was "to facilitate" Olive Fountain's plan to develop a residential subdivision on its acreage. The subdivision was to be called "4 Mile Point." The parties agreed that all costs associated with the roadway's construction and maintenance, the utility installations, the construction of a fence along the roadway's southern border, and the installation of a security gate at the roadway's entrance were to be at the "sole expense" of Olive Fountain.

Notwithstanding these plans, construction on the 2007 easement never commenced. Instead, in 2010, the parties discussed a new access plan that would utilize a driveway off Hull Loop Road and change the location of the easement to the following description:

> A 60' [ft.] wide easement for ingress and egress, which is located 30' on each side of the centerline of the existing roadway on the property connecting [Olive Fountain's] property to the intersection of Hull Road (East West), and an additional 10' area on each side of said 60' wide strip thereof for buried utilities.

The amendment required Olive Fountain to "make every effort to leave all native vegetation and rock in place" during construction, understanding that "some vegetation . . . may need to be

3

removed to improve the road." The parties executed and recorded the 2010 Amendment without a metes-and-bounds or legal description of the roadway.

The old road/driveway used by the parties and their predecessors to access Olive Fountain's land runs along the southern boundary of Greenfield Trust's property, where it borders another property owned by a neighboring third party, Clint Hull. This roadway connects to Hull Loop Road, a public road, and runs past the property's old farmhouse towards Olive Fountain's property via an "old skid trail/road." Both the "old road" and "skid road" were the same road Olive Fountain, and its predecessors "had used over the years to access the Olive Fountain ground." Because this access was a "dirt-rutted country road," it was impassable in wet and winter conditions.

In 2010, around the time the negotiations for amending the easement were taking place, Olive Fountain contracted with Sandra Young to help develop the "4 Mile Point" subdivision and access roadway. Sandra Young was the CEO of E2 Planning & Design in 2010, and later became the CEO of Verdis, another planning and engineering firm. It was Young's idea to use the southern route to the Olive Fountain property. This was the route ultimately described in the 2010 Amendment. Young also negotiated the agreement on behalf of Olive Fountain with Craig Wise, the attorney for Greenfield Trust. Young and Olive Fountain claim there were multiple meetings that year to discuss the amended easement agreement with Greenfield Trust, citing invoices and emails through the record as evidence of these meetings. Greenfield Trust contended through its briefing and at trial that most, if not all, of the claimed meetings never occurred. The district court ultimately found that "the current parties entered into the [2010 amended easement agreement]" "[a]fter a series of negotiations." Still, despite Mr. Wise's urgings on behalf of Greenfield Trust, no metes-and-bounds description or survey was ever completed to define the easement's boundaries.

In 2011, the parties and Sandra Young attended public meetings with Kootenai County officials to present and discuss Olive Fountain's plans to create a subdivision. At one meeting, the Greenfields sought "assurance that their property would remain private and that the [roadway] gate [would] continue to be locked." Neither Dwight nor Monroe objected to the placement of the easement road across the southern border of Greenfield Trust's property. Kootenai County subsequently approved Olive Fountain's request to create a subdivision of ten residential lots. However, sometime after acquiring approval from the county, Olive Fountain made the decision

4

to discontinue its subdivision project. The family members of Olive Fountain "decided that the project was too much for them to bear on their own," with "several more years and vast sums of money" required to complete the project. Nevertheless, with an access road still needed to develop their land, Olive Fountain hired Verdis (headed by Sandra Young) to go ahead with plans to construct a gravel access road. This would allow Olive Fountain to sell its property as two home sites.

Construction on a gravel road began on or about August 17, 2016. Olive Fountain worked with Verdis and its subcontractor, Alamo Excavating, Inc., to design and build a roadway pursuant to the easement agreements. The survey for the site disturbance plans were previously completed by Meckel Engineering & Surveying, Inc., where Dwight Greenfield is employed as a surveyor. On arrival, Alamo had to request that the centerline of the road be staked because it had only been provided with the dimensions from an existing fence line. Verdis then employed another engineering firm to stake the road "as designed by Verdis . . . and not the easement description in the 2010 Amendment." No notice was given to Greenfield Trust that construction had started.

Over thirty mature trees were removed during construction, including red pine, white pine, and cedars. Alamo Excavation contracted Ross Kimball Logging to cut down and remove the trees through the timbered right of way, and allowed Ross Kimball to keep and sell the timber as compensation for its logging work. Ross Kimball removed a portion of the felled trees from the property and sold that as timber for $2,354.20. Soon after Ross Kimball removed the trees, Alamo was warned that the trees had been improperly removed and not to take any additional felled trees from Greenfield Trust's property. Thereafter, Ross Kimball left all remaining cut timber on the construction site.

On learning that construction of the roadway was underway, Christina Greenfield, Dwight Greenfield's ex-wife, viewed the site and contacted the local sheriff to inform him of trespass on Greenfield Trust property. Christina also contacted a senior engineer for Verdis to demand that construction cease. Additional complaints and letters "poured out, including correspondence sent to the Idaho Governor, Idaho Attorney General, U.S. Environmental Protection Agency, and any contractor that touched the project." However, road construction continued despite all objections. Around this time, Christina began to assert the easement agreement was fraudulent, later asserting in pretrial briefings that the 2010 Amendment was a forgery as to Dwight's and Monroe's signatures.

Notably, Christina Greenfield is neither a party to the suit nor a trustee or beneficiary to Greenfield Trust. She does not have any interest in the real properties involved and she is not an attorney. However, she had written permission from Dwight Greenfield to represent Greenfield Trust in all court proceedings and legal communications in this case. Christina's involvement initially appeared to have come about due to the conflict at the commencement of the 2016 construction; however, the record shows she also attended the 2011 public meetings discussing the 4 Mile Point subdivision plans and proposed easement road, to which she raised no objection. While Christina claimed at trial she was present for all other negotiations and meetings for both the 2007 Agreement and 2010 Amendment, this was disputed by other parties. Additionally, the district court found that whenever Olive Fountain and Young "attempted to contact the Trust to discuss resolution, the brothers Greenfield [sic] went silent on the matter and deferred to Christina."

In October 2018, Greenfield Trust filed this action against Olive Fountain, asserting claims for trespass, mutual mistake, failure of a condition precedent, failure of consideration, quiet title, exceeding the scope of the easement, and injunctive relief. Olive Fountain did not file an answer until June 2019. It appears from the record that Greenfield Trust failed to serve Olive Fountain after filing the complaint in the district court. Although the district court initially entered a default against Olive Fountain, it was later set aside due to the lack of service. In its answer, Olive Fountain counterclaimed for tortious interference with a prospective economic advantage, abuse of process, and quiet title. Among its allegations, Olive Fountain contended that Greenfield Trust "reversed its position on the construction of the access road and plain language of the Amended Easement Agreement because the road being built was a narrower gravel road rather than a more expensive wide asphalt road which would have supported future subdivision of the Trust property." Additionally, while this lawsuit included Kootenai County as a defendant, it "was only named as to [Greenfield's] claim for injunctive relief and did not participate at trial after having informed the Court it would abide by the Court's decision on that claim."

Once litigation commenced, all work on the roadway ceased; however, the roadway was essentially completed prior to litigation, with only cleanup remaining. Attempts to mediate the dispute in late 2019 failed, and the parties proceeded to trial in March 2020. In its opening statements, Greenfield Trust informed the district court it would not challenge the validity of the easement instrument, nor pursue its prior allegations of fraud and forgery. During the four-day

trial, only the issues of timber trespass, damages, and violation of the easement were addressed. Greenfield Trust initially explained that it was opting to not challenge the 2010 Amendment in favor of pursuing the trespass case. Greenfield Trust later conceded in trial that the 2010 Amendment was "legally enforceab[le]."

At the close of trial, the district court determined that the newly constructed road could be viewed as three segments. The first segment is the "roadway as constructed that lies to the north of the Hull-Trust property line from where it enters off of Hull Road on the west until it meets with the portion of the existing driveway that is fully on the Trust property." The second segment then "follows the existing driveway until it forks off to the east near the existing farmhouse on the [Greenfield] Trust property." The third segment "is from the end of the Second Segment along what was described as the old skid road." *See* Figure 1, *infra*.



**Figure 1. Map of the Disputed Roadway**

The district court determined that the first segment had been constructed "well outside of the described easement in the 2010 Amendment" because "it is situated well to the north of the 30' area off the centerline of the existing driveway on both the Hull and Trust properties." Additionally, the court found that the second road segment was constructed within the easement boundaries, while the third segment was built over the "old skid road" used for historical access to the Olive Fountain property. These findings led the district court to conclude that there was latent ambiguity in the 2010 Amendment's easement description. Additionally, the court concluded that a common law trespass had occurred along the first roadway segment. The district court explained:

> The Court, like the litigants herein, finds no patent ambiguity in the 2010 Amendment as to the easement description. However, the Court finds that a latent

7

ambiguity arose when it became clear that both sides had knowledge that old driveway entering from West Hull Loop (the First Segment) was in large part located on land not owned by the Trust, but by the neighbor Hull. The Trust could not grant what it did not own. . . . The Court interprets the intent of the parties to be that the easement width (30' on each side of the centerline) should be as tight to the old driveway as possible allowing for an ingress and egress over the Trust property. The roadway as constructed by Olive Fountain ran way wide of this mark and was not "within reason." Olive Fountain offers no particular reason why the roadway, as constructed, is so far north of the 30' width allowed under the written easement. It is all the more apparent that it was not necessary or reasonable to make the roadway so far north of the property line when one views the proposed remediated roadway . . .

In applying the facts of this case to these elements, the Court concludes that as a result of Olive Fountain's actions in constructing a road outside the boundaries of the 2010 Amendment, a trespass was committed in the First Segment.

The court further determined that the remaining road segments did not constitute a trespass as they were constructed within the easement's boundaries. Additionally, the court concluded that there was a timber trespass because Olive Fountain's actions in allowing felled trees to be removed and sold were "both willful and intentional."

Greenfield Trust sought $1,064,120 in trespass damages based on the testimony of Dwight Greenfield as to the diminished value of the property, in addition to the $7,062.60 in treble damages for the timber trespass. At trial, Dwight Greenfield was the only witness called by Greenfield Trust to testify on damages and the property's value. Dwight testified that a constructed culvert caused and worsened flooding to the Greenfield Trust property. He also stated that a prior trail used to access a wooded area at the back of the property was "cutoff from use." Dwight then estimated the damages to Greenfield Trust's property value as ranging between $532,060 to $1,064,120. No other evidence was presented on trespass damages by either party.

Dwight explained he calculated the land's value by examining the value of Harbor View subdivision (a developed property located north of both the Greenfield Trust and Olive Fountain properties). Dwight concluded the average price per acre of those lots was $212,500. Because the Greenfield Trust property consists of 143.99 acres, Dwight multiplied 143.99 acres by $212,500 to calculate the land's potential developed value at $30,600,000. Dwight then subtracted $4 million for the cost of development. Thus, Dwight estimated Greenfield Trust's property value at $26,600,000 prior to the alleged damages caused by the roadway's construction. Dwight also testified that "the portion of the roadway built outside of the easement on the first segment diminished the property value" because "it [visibly] destroyed a large portion of [Greenfield

8

Trust's] property." He estimated this devaluation to the property at "[b]etween 2 and 4 percent" of the property's total value, which would mean a loss of somewhere between $532,060 to $1,064,120.

On cross-examination, Dwight stated that all of his notes on these calculations were supplied by Christina Greenfield. Dwight also conceded that his calculations of "2 and 4 percent" devaluation were merely based on his and Monroe's "belief" of what was a fair damages assessment to their property following construction of the road, rather than any research or consultation with an expert:

Q. Did you look anything up or consult any information as to why that 2 percent is a fair number to you?

A. No, it was our belief.

Q. So just pulled up out of your guys' minds, right?

A. Yes.

Similarly, Dwight's estimate of $4 million as the difference in value between his undeveloped land and Harbor View's developed lots with roads, utilities, and lake-view parcels, was based solely off his personal belief, stating it "[s]ounded like a fair number."

The district court did not find Greenfield Trust met its burden of proof with respect to trespass damages. It found Dwight's testimony and analysis "to be of little weight and not credible," observing that Dwight "did not appear to have any real confidence in his own testimony" and that the information was actually "fed to him by Chris Greenfield." The court also did not put stock in Dwight's monetary comparison of the Greenfield Trust's property—which is "wholly undeveloped" land save for outbuildings, an "old driveway and a dilapidated farmhouse"—to the value of local platted subdivisions with installed utilities and paved roads. Thus, the district court concluded the "evidence of damage" concerning the trespass claim was "too thin to sustain a finding" and that the requested amount was not "credible or reasonable."

Because Dwight's testimony was the only evidence of trespass damages presented to the district court, the district court concluded that only nominal damages could be awarded. While acknowledging this "may be a harsh result," the court determined that "[Greenfield] Trust did not meet its burden of proof as to damages." It then awarded Greenfield Trust $1,000 in nominal damages for Olive Fountain's common-law trespass. The district court also quieted title to the real property disturbed by the construction to Greenfield Trust and ordered the easement to be surveyed

and a metes-and-bounds description be prepared, to be paid for by Olive Fountain. Olive Fountain's counterclaims were all denied.

Both parties promptly filed post-trial motions: Greenfield Trust filed a motion to reconsider, while Olive Fountain filed a motion for both attorney fees and sanctions under varying arguments of bad-faith and frivolous litigation by Greenfield Trust. In its briefing, Greenfield Trust asked the district court to amend its finding of common law trespass for the improper road construction to a determination of statutory trespass. While Greenfield Trust recognized this would reduce its nominal damages award from $1000 to only $50, this would enable it to seek an award of attorney fees against Olive Fountain. The district court then amended some of its earlier findings and conclusions to a degree. The court clarified its order on quiet title concerning the easement boundaries; found that Olive Fountain's trespass was willful and intentional, and thus, a statutory trespass; amended the nominal damages awarded to $50 pursuant to Idaho Code section 6-202 (2016); and declined to impose any sanctions. The court later denied Olive Fountain's request for attorney fees.

Ultimately, the district court awarded Greenfield Trust $2,354.20 in damages for timber trespass under Idaho Code section 6-202 (2016), which with statutory trebling came to $7,062.60. In addition to awarding $50 in nominal damages for statutory trespass under Idaho Code section 6-202 (2016), the court quieted title to the real property outside the easement's boundaries in the name of Greenfield Trust and quieted title to real property within the easement's boundaries in the name of Olive Fountain, consistent with the easement's terms and conditions. Greenfield Trust timely appealed. On appeal, Kootenai County did not file a brief but maintains that it will abide by the Court's decision on these claims.

## II. STANDARD OF REVIEW

Before analyzing the issues on appeal, some clarification on the standard of review is warranted. Greenfield Trust frames its arguments under an abuse of discretion standard, arguing that the district court abused its discretion in every possible way: failing to correctly perceive the issues as one of discretion, failing to act "within the outer boundaries of such discretion and consistently with applicable legal standards," and failing to make a reasonable decision. *See Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). Greenfield Trust relies on *Weitz v. Green*, 148 Idaho 851, 857, 230 P.3d 743, 749 (2010), for applying an abuse of discretion standard of review. *Weitz* states:

10

> When we consider an appeal from a district court sitting as the fact finder, we do so through our abuse-of-discretion [lens]; that is, we examine whether the trial court (1) rightly perceived the issues as ones of discretion; (2) acted within the outer boundaries of that discretion and appropriately applied the legal principles to the facts found; and (3) reached its decision through an exercise of reason. In conducting our review, we liberally construe the district court's findings in favor of the judgment. We will not disturb a district court's findings of fact unless they are clearly erroneous. A court's findings of fact are not clearly erroneous if they are supported by substantial and competent, though conflicting, evidence.

148 Idaho 851, 857, 230 P.3d 743, 749 (2010), *holding modified by Latvala v. Green Enterprises, Inc.*, 168 Idaho 686, 485 P.3d 1129 (2021) (quoting *Lettunich v. Lettunich*, 141 Idaho 425, 429, 111 P.3d 110, 114 (2005)) (internal citations omitted).

Greenfield Trust's reliance on the first sentence from the quoted language from *Weitz* is misplaced. Cases preceding and following *Weitz*—including those dealing with trespass—have explained that this Court's review of a bench trial does not follow an abuse of discretion standard. Rather, our appellate review "will be limited to a determination of whether the evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law." *Green River Ranches, LLC v. Silva Land Co., LLC*, 162 Idaho 385, 389, 397 P.3d 1144, 1148 (2017). *See also Radford v. Van Orden*, 168 Idaho 287, 298, 483 P.3d 344, 355 (2021), *as amended* (Mar. 22, 2021); *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017); *Ransom v. Topaz Mktg., L.P.*, 143 Idaho 641, 643, 152 P.3d 2, 4 (2006). Even *Weitz* specifies that "[t]he findings of the trial court on the question of damages will not be set aside when based upon substantial and competent evidence." 148 Idaho at 857, 230 P.3d at 749.

Thus, the trial court's findings of fact shall not be set aside unless they are clearly erroneous. *Radford*, 168 Idaho at 298, 483 P.3d at 355; *Ransom*, 143 Idaho at 643, 152 P.3d at 4. Clear error does not occur where the findings are supported by substantial and competent evidence, which is relevant evidence that a reasonable mind might accept to support a conclusion. *Radford*, 168 Idaho at 298, 483 P.3d at 355; *Green River Ranches, LLC*, 162 Idaho at 389, 397 P.3d at 1148. "When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court." *Ransom*, 143 Idaho at 643, 152 P.3d at 4 (citations omitted). Additionally, we will "liberally construe the trial court's findings of fact in favor of the judgment entered, as it is within the province of the trial court to weigh conflicting evidence and testimony and judge the credibility of witnesses." *Green River Ranches, LLC*, 162 Idaho at 389, 397 P.3d at 1148. This is a long held rule of the Court because "[t]he trial court is in a far better

position to weigh the demeanor, credibility and testimony of witnesses, and the persuasiveness of all the evidence." *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 780, 25 P.3d 88, 93 (2001) (quoting *Quick v. Crane*, 111 Idaho 759, 770, 727 P.2d 1187, 1198 (1986)).

On the other hand, legal conclusions are always questions of law that this Court freely reviews. *Green River Ranches, LLC*, 162 Idaho at 389, 397 P.3d at 1148. "This Court . . . is not 'bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented.' " *Mortensen*, 163 Idaho at 50, 408 P.3d at 48 (citation and brackets omitted).

### III. ANALYSIS

**A. The district court's findings on the question of damages for statutory trespass were based upon substantial and competent evidence.**

Although the district court awarded Greenfield Trust damages for statutory trespass, these were only token damages of $50 based on Idaho Code section 6-202 (2016). Greenfield Trust contends that it is entitled to recover significantly more on its statutory trespass claim based on "undisputed damages."  It also argues that the district court abused its discretion by "rejecting the evidence in total," rather than "determin[ing] the scope of amount [sic] of those damages based on all of the evidence." Olive Fountain contends that the district court acted consistent with its obligation to weigh evidence and assess witness credibility by awarding only limited damages based on  "the speculative nature of the Trust's [claim for] diminution in value damages." It adds that the court did not abuse its discretion by failing to award "whatever amount is requested by the plaintiff," especially when it expressly found the evidence was not credible.

While the basis for the judgment in the case was changed to a statutory trespass following the post-trial motions, at trial this case was initially argued as a common law trespass. In a common law trespass action, a plaintiff is entitled to recover actual damages for the defendant's wrongful entry on plaintiff's property, even where the defendant's conduct was neither willful nor intentional.  *Bumgarner v. Bumgarner*, 124 Idaho 629, 639, 862 P.2d 321, 331 (Ct. App. 1993). The burden of proof lies with the plaintiff in establishing "a causal connection between the defendant's alleged wrongful conduct and the plaintiff's injury, as well as the extent of the injury sustained." *Nelson v. Holdaway Land and Cattle Co.*, 107 Idaho 550, 552, 691 P.2d 796, 798 (Ct. App. 1984). These requirements are part of the elements of common law trespass, which are set forth in Idaho's Civil Jury Instructions:

> The plaintiff has the burden of proving each of the following propositions:
>     1.  That the defendant went upon the plaintiff's land;

12

2. That the plaintiff did not consent to defendant's entry on plaintiff's land;

3. The nature and extent of the damages to plaintiff and the amount thereof.

IDJI 4.40. Thus, at trial Greenfield Trust bore the burden of proving by a preponderance of the evidence "the nature and extent of the damages" resulting from the trespass. *Id.* Even in statutory and timber trespass cases, the burden of proof is on the plaintiff to establish evidence proving the damages resulting from the trespass. *See Mortensen*, 163 Idaho at 52–53, 408 P.3d at 50–51; *Weitz*, 148 Idaho at 863–68, 230 P.3d at 755–60.

"As a general rule, the owner of property may testify as to its value." *Taysom v. Taysom*, 82 Idaho 58, 64, 349 P.2d 556, 560 (1960). Thus, it is not necessarily fatal to Greenfield Trust's claim that Dwight's testimony provided their only proof of damages at trial. However, "damages are to be proven with reasonable certainty." *Raymond v. Idaho State Police*, 165 Idaho 682, 687, 451 P.3d 17, 22 (2019). When owners testify on the value of their property, "the weight to be given their testimony depends on their background, knowledge and experience." *Simpson v. Johnson*, 100 Idaho 357, 362, 597 P.2d 600, 605 (1979). Where damages are inherently speculative, proof of damages "will be an evidentiary issue that may need to be addressed by the trial court prior to or during trial, or ultimately resolved at trial by the [fact-finder]." *See Raymond*, 165 Idaho at 687, 451 P.3d at 22. "[W]hile the damages may not be determined by mere speculation or guess, it will be enough if the evidence show [sic] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Id.* (quoting *Story Parchment Co. v. Paterson Parchment Paper*, 282 U.S. 555, 563 (1931)).

This case is analogous to *Taysom*, in which a respondent cross-appealed on the grounds that "the trial court erred in refusing to allow her damages (beyond nominal damage) on account of the trespass in and across her land." 82 Idaho at 64, 349 P.2d at 560. The only evidence presented at the *Taysom* trial on damages was the property owner's personal testimony that the value of her 30-acre farm was $15,000. She also testified that a sale of a one-acre lot from her property fell through when the appellant dug a trench for a water line. Thus, the respondent testified that she sustained damage of $1,000, her estimated value of one fifteenth of the land. *Id.* The trial court determined this evidence was insufficient to justify an award of actual damages, and this Court affirmed on appeal. We explained that the alleged damages from respondent's testimony were "purely speculative and unsupported by competent evidence." Because she "failed to adduce evidence as to the value of the property after the installations relating to the water line, or cost of

13

placing the land in its original condition," the trial "court properly concluded that respondent's proof of damage was insufficient to justify an award in excess of nominal damage." *Id.*

Similar results occurred in *Simpson*, where the trial court rejected the opinion of an expert witness. 100 Idaho at 362, 597 P.2d at 605. In that case, the property owners tried to prove at trial, through personal testimony, that the market value of their home at the time of the sale was $4,000, and through expert witness testimony that the market value was $4,500. *Id.* The trial court rejected the testimonial evidence, noting it gave "little weight" to the testimony of the owners and "did not believe that the [expert] opinion was based on a credible appraisal of the property." Such determinations were "the prerogative of a trier of facts." *Id.* Thus, this Court affirmed that the plaintiffs "failed to meet their burden of proof in establishing damages." *Id.*

Such is the case here. Greenfield Trust relied solely on the testimony of Dwight Greenfield, the trustee and beneficiary of Greenfield Trust, whose personal testimony was the only evidence of both (1) the property's value and (2) the alleged damages resulting from Olive Fountain's trespass. He estimated his property's value at $26,600,000. As noted, to reach a valuation, Dwight compared his undeveloped acreage to a neighboring property with developed lots, including paved roads, utilities, and lakefront views. Then he subtracted $4 million for the cost of development. When the court asked how Dwight knew the future development would cost that much, Dwight answered, "I figured that was a fair amount." Dwight had the same answer for how he determined there was a 2% to 4% decrease in the property value due to the trespass: it was simply his "belief" of a fair damages assessment following road construction, with the numbers coming off the top of his head. As Dwight stated in court, he "just pulled" the number "out of [his] mind."

On cross-examination, Dwight also stated that all of his notes, MLS data, and information on these calculations were supplied by Christina Greenfield. In effect, much of the information relied on by Dwight was hearsay. In short, Dwight offered an entirely speculative opinion of the value of his property and the extent of the damages; the only "research" he conducted or relied on was supplied by a third party, not Dwight himself. Although a property owner is allowed to offer his opinion to the trier of fact as to such matters, his opinion does not have to be accepted or believed by the court. Here, because Dwight failed to establish a proper evidentiary foundation for any of his opinions as to value or damages, the court did not err in affording it no weight.

These foundational issues, coupled with the district court's finding that Dwight "did not appear to have any real confidence in his own testimony," led the district court to determine his

14

testimony "to be of little weight and not credible." Importantly, Dwight's testimony was the *only* evidence before the court concerning trespass damages or the alleged diminution in property value. Greenfield Trust did not offer any expert testimony on the value, or diminution in value, of its property. It did not proffer other evidence from market value appraisals, real estate consultants, or any other means to determine specific, reasonable damages with any certainty. In sum, the only evidence before the court was the opinion of a lay witness who lacked confidence in his own testimony, was deemed not credible to the court, and who relied on information either "fed" to him by a third party (i.e., hearsay) or based on his own speculation. As in *Taysom*, Dwight's testimony was "purely speculative and unsupported by competent evidence," 82 Idaho at 64, 349 P.2d at 560, which made that evidence insufficient to justify an award of actual damages, much less an award of six or seven figures depending on the multiplier Dwight employed. Therefore, the district court did not err in awarding only nominal damages. *See Aztec Ltd., Inc. v. Creekside Inv. Co.*[,] 100 Idaho 566, 570, 602 P.2d 64, 68 (1979) ("[I]n cases of trespass to land, the plaintiff need not prove actual harm in order to recover nominal damages. Nominal damages are presumed to flow naturally from a wrongful entry upon land.").

Greenfield Trust points to the holding in *Weitz* to contend that a "trial court must assess diminution damages when presented with supporting evidence." In other words, Greenfield Trust asserts the removal of trees and effects to the aesthetic value of its property makes "diminution in the market value of the land . . . the most appropriate remedy" and one required at the trial court. However, *Weitz* dealt with the appropriate damages calculation for lost trees and the recognition that property owners are not restricted to market value damages alone. 148 Idaho at 867, 230 P.3d at 759. The district court in *Weitz* erred by basing the damages award solely on marketable value of timber rather than the aesthetic values the trees brought to a forested property that the owners wanted to maintain in a natural state. *Id.* In contrast, this appeal deals only with actual damages concerning the alleged diminution of property value, a determination Greenfield Trust based solely on the property owner's testimony. Although we agree that evidence of a diminution in aesthetic value can result in property loss damages, Greenfield Trust presented no credible or reasonable evidence of what those damages were.

In sum, the district court committed no error here; its findings on the question of damages were based upon substantial and competent evidence. In ascertaining the weight to be afforded noncredible evidence of damages, even when it is opposed by no evidence at all, a trial court is

15

not required to award unproven damages. Accordingly, we affirm the judgment of the district court.

### B. Olive Fountain is entitled to an award of attorney fees on appeal.

Both parties request an award of attorney fees on appeal. Greenfield Trust requests attorney fees under Idaho Code section 6-202, while Olive Fountain argues for attorney fees pursuant to Idaho Code section 12-121. It states: "In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121.

This Court has held that an appeal brought to merely second guess the trial court by asking us to reweigh the evidence, or that failed to show the district court incorrectly applied well-established law, is an appeal brought without reason or foundation. *State, Dep't of Transp. v. Grathol*, 158 Idaho 38, 54, 343 P.3d 480, 496 (2015); *In re Doe*, 159 Idaho 192, 200, 358 P.3d 77, 85 (2015). Here, Olive Fountain is the prevailing party on appeal. Greenfield Trust brought an appeal, based on an incorrect standard of review, and effectively asked this Court to second guess the trial court's findings. It has asked this Court to reweigh speculative trial testimony in its favor that was offered without foundation. For these reasons we conclude that this appeal was pursued unreasonably and without foundation. Therefore, Olive Fountain is entitled to attorney fees pursuant to Idaho Code section 12-121.

### IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment. Attorney fees and costs are awarded to Olive Fountain.

Chief Justice BEVAN, Justices BRODY and ZAHN **CONCUR.**

STEGNER, J., concurring in part and dissenting in part.

While I agree with the majority's opinion that the district court did not err in declining to award civil trespass damages to Greenfield Family Trust ("Greenfield Trust"), I respectfully dissent from the majority's decision to award attorney fees to Olive Fountain Land Company, LLC ("Olive Fountain"). Idaho Code section 12-121 provides for an award of attorney fees when an appeal is "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. In my view, Greenfield Trust's appeal is not frivolous, unreasonable, or without foundation. As such, I would decline to award attorney fees to Olive Fountain on appeal.

16

The majority bases its award of attorney fees on its conclusion that the Greenfield Trust "effectively asked this Court to second guess the trial court's findings. It has asked this Court to reweigh speculative trial testimony in its favor that was offered without foundation." I disagree with the majority's position for several reasons. First, I note that Olive Fountain never asserted that Greenfield Trust is asking this Court to reweigh evidence. Olive Fountain's entire argument that it is entitled to attorney fees on appeal is as follows:

> Pursuant to I.A.R. 41 and I.C. § 12-121, Olive Fountain requests an award of attorney's fees on appeal. Fees on appeal are appropriate where the review court is "left with an abiding belief that the appeal has been brought . . . frivolously, unreasonably, or without foundation." *Berkshire Investments, LLC v. Taylor*, 153 Idaho 73, 87, 278 P.3d 943 (2012). This appeal checks all of the aforementioned boxes, and is simply an adverse reaction to a less than expected trial outcome. The appeal is not supported by authority, and is "without merit." *Taysom v. Taysom*, 82 Idaho 58, 64, 349 P.2d 556 (1960) (analogous case discussed infra).

At no point does Olive Fountain argue that Greenfield Trust asked this Court to reweigh the evidence.

Second, although ultimately determined to be without merit, Greenfield Trust's arguments are not frivolous, unreasonable, or without foundation. Relying on *Weitz v. Green*, 148 Idaho 851, 230 P.3d 743 (2010), Greenfield Trust argued that, "despite recognizing damages occurred, the district court failed to award any damages for diminution of value." *Weitz* stands for the proposition that market value is not the only way to assess damages:

> Individuals may value land for specific and personal reasons, and in such instances justice requires that an award for damages restore these property owners to the position they enjoyed prior to a tortfeasor's interference. In instances where the property owners have been deprived of a key interest in their property, but such injury does not diminish the property's market value, reasonableness and practicality provide more appropriate limits upon an award for restoration costs[.]

148 Idaho at 867, 230 P.3d at 759. Greenfield Trust essentially argued that the district court utilized the incorrect legal standard to assess the trespass damages and therefore erred in failing to consider the aesthetic value of the felled trees. In my view, this argument is more than simply requesting this Court to reweigh the evidence; rather, Greenfield Trust relies upon this Court's case law to support its proposition that the district court failed to consider relevant evidence altogether. While Greenfield Trust's arguments were ultimately unsuccessful, they are both cogent and supported by case law. Consequently, Greenfield Trust's arguments are not frivolous, unreasonable, or without

17

foundation. As a result, I do not support an award of attorney fees to Olive Fountain in this appeal. Accordingly, I respectfully dissent.